B. Mills LATHAM, Law Offices of B. Mills Latham, P.C., and Latham and Moss, Petitioners,

v.

Ernest M. CASTILLO and Audona A. Castillo, individually and as representatives of the Estate of Kay Castillo, deceased, Respondents.

No. 96–0986.

Supreme Court of Texas.

Argued April 23, 1997.

Decided June 23, 1998.

Rehearing Overruled Aug. 25, 1998.

Deborah R. Sunderman, Corpus Christi, Gaston M. Broyles, Jr., Dallas, for Petitioners.

John Gano, Stephen M. Gano, Houston, Errlinda M. Castillo, Corpus Christi, for Respondents.

SPECTOR, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, Baker, Abbott and Hankinson, Justices, join.

In this case, we consider whether an attorney's affirmative misrepresentations to his clients that cause the clients to lose their day in court can constitute unconscionable action under the Deceptive Trade Practices–Consumer Protection Act. The court of appeals answered in the affirmative. We affirm the court of appeals' remand of the DTPA claim, and we reverse and render judgment that the Castillos take nothing on their remaining claims.

I.

On January 3, 1986, Audona Castillo prematurely gave birth to twin daughters, Kay and Sara, at Taft Hospital. Born with birth defects, the girls were immediately transferred to Driscoll Foundation Children's Hospital where both underwent surgery. Sara died approximately one week later. The Castillos then filed a medical malpractice suit against Driscoll Hospital on Sara's behalf and received a $6,000,000 default judgment. Later, their attorney, Rene Rodriguez, settled the case for $70,000.

Kay Castillo, the surviving twin, died on February 14, 1988. In December 1989, the Castillos hired B. Mills Latham to file a legal malpractice claim against Rodriguez for settling the default judgment and to pursue a medical malpractice claim against Driscoll Hospital for Kay's death. While Latham settled the legal malpractice claim against Rodriguez for $400,000, the statute of limitations ran on the Castillos' medical malpractice claim on February 14, 1990 without suit being filed. The Castillos then sued Latham for legal malpractice because Latham failed to file the medical malpractice action for Kay's death within the two-year statute of limitations. The Castillos also sued Latham for unconscionable action under the DTPA because Latham affirmatively represented to them that he had filed and was actively prosecuting the medical malpractice claim. Finally, the Castillos alleged that Latham wrongfully misrepresented himself, breached the contract of employment, and was negligent.

After the Castillos presented their case to a jury, the trial court granted a directed verdict for Latham that the Castillos take nothing. The court of appeals reversed and remanded, holding that the Castillos had presented some evidence to prevent a directed verdict on their DTPA claim. The court of appeals also remanded the "remaining theories of recovery"—fraudulent misrepresentation and breach of contract—without discussion. The court of appeals affirmed the directed verdict on the negligence claim, however, because the Castillos did not present evidence that but for Latham's negli-

gence, the medical malpractice suit would have been successful.[1].

The central question before us is whether the Castillos have presented some evidence to support each element of their DTPA cause of action. We hold that they have done so.

## II.

The trial court granted a directed verdict against the Castillos on all claims. Accordingly, we must view the evidence in the light most favorable to them and indulge every reasonable inference in their favor. *Harbin v. Seale,* 461 S.W.2d 591, 592 (Tex.1970). If reasonable minds could differ on controlling facts, the trial court errs in refusing to submit the issues to the jury. *Collora v. Navarro,* 574 S.W.2d 65, 68 (Tex.1978). We consider the DTPA claim first.[2]

## A.

■ The Castillos alleged Latham's conduct constituted an "unconscionable action or course of action" that violated the DTPA. TEX. BUS. & COM.CODE § 17.50(a)(3). Under section 17.45, "unconscionable action or course of action" means "an act or practice which, to a person's detriment: (A) takes advantage of the lack of knowledge, ability, experience, or capacity of a person to a grossly unfair degree; or (B) results in a gross disparity between the value received and consideration paid, in a transaction involving transfer of consideration." *Id.* § 17.45(5). The Castillos have relied only on subsection (A) in asserting that Latham's actions were unconscionable. To be actionable under subsection (A), the resulting unfairness must be "glaringly noticeable, flagrant, complete and unmitigated." *Chastain v. Koonce,* 700 S.W.2d 579, 584 (Tex.1985).

The Legislature's stated public policy in enacting the DTPA is to "protect consumers against false, misleading, and deceptive business practices [and] unconscionable actions." TEX. BUS. & COM.CODE § 17.44. To achieve that goal, the Legislature has mandated that the Act shall be "liberally construed and applied." *Id.* Therefore, we must view Latham's actions with this legislative directive in mind.

■ Attorneys can be found to have engaged in unconscionable conduct by the way they represent their clients. *See, e.g., DeBakey v. Staggs,* 605 S.W.2d 631, 633 (Tex.Civ. App.—Houston [1st Dist.] 1980), *writ ref'd n.r.e. per curiam,* 612 S.W.2d 924 (Tex.1981) (finding an attorney unconscionably took advantage of a client to a grossly unfair degree when the attorney knowingly failed to obtain in a timely manner a name change for the client's minor child). The Castillos assert that Latham acted unconscionably in representing that he was actively prosecuting their medical malpractice claim for Kay's death when in fact he was not.

■ The Castillos depended on Latham to file suit against the hospital for Kay's death. As Mrs. Castillo testified, "You trust in a professional because they know more than you." The record reveals, and Latham's attorney conceded at oral argument before this Court, that there is some evidence that Latham told the Castillos he had filed the medical malpractice claim when in fact he had not. Although he affirmatively represented to them that he was actively pursuing the claim, Latham never did file the suit and limitations ran. As a result, the Castillos lost the opportunity to prosecute their claim against the hospital for Kay's death.

1. The Castillos have not appealed the court of appeals' disposition of the negligence cause of action and therefore, it is not before this Court.

2. The Legislature amended the DTPA in 1995. Act of May 19, 1995, 74th Leg., R.S., ch. 414, 1995 Tex. Gen. Laws 2988. Unless otherwise noted, all DTPA references will be to the pre-amendment provisions applicable when this suit was filed.

   Under the amendments effective September 1, 1995, lawyers may not be sued under the DTPA unless they engage in one of the following acts: (1) an express misrepresentation of a material fact that cannot be characterized as advice, judgment, or opinion; (2) a failure to disclose; (3) an unconscionable action or course of action that cannot be characterized as advice, judgment, or opinion; or (4) breach of an express warranty that cannot be characterized as advice, judgment, or opinion. TEX. BUS. & COM.CODE § 17.49(c).

Viewing Latham's actions in the light we must, his actions are similar to the attorney's conduct in *DeBakey*. Latham took advantage of the trust the Castillos placed in him as an attorney. Therefore, the Castillos have presented some evidence that they were taken advantage of to a grossly unfair degree.

Latham argues, however, that the Castillos' DTPA claim is essentially a dressed-up legal malpractice claim. Therefore, he asserts, the Castillos must prove that they would have won the medical malpractice case for Kay's death in order to recover. Because they did not present any evidence on this, Latham argues, the Castillos cannot recover. We disagree.

■ The legislative intent in enacting the DTPA was to provide plaintiffs a remedy where the common law fails. *See Woo v. Great Southwestern Acceptance Corp.*, 565 S.W.2d 290, 298 (Tex.Civ.App.—Waco 1978, writ ref'd n.r.e.). Section 17.43 states that the remedies provided by the Act "are *in addition* to any other procedures or remedies provided for in any other law." TEX. BUS. & COM.CODE § 17.43 (emphasis added). Moreover, the Legislature mandates that the DTPA is to be "liberally construed and applied to promote its underlying purposes." *Id.* § 17.44. Recasting the Castillos' DTPA claim as merely a legal malpractice claim would subvert the Legislature's clear purpose in enacting the DTPA—to deter deceptive business practices.

If the Castillos had only alleged that Latham negligently failed to timely file their claim, their claim would properly be one for legal malpractice. However, the Castillos alleged and presented some evidence that Latham affirmatively misrepresented to them that he had filed and was actively prosecuting their claim. It is the difference between negligent conduct and deceptive conduct. To recast this claim as one for legal malpractice is to ignore this distinction. The Legislature enacted the DTPA to curtail this type of deceptive conduct. Thus, the DTPA does not require and the Castillos need not prove the "suit within a suit" element when suing an attorney under the DTPA. The Castillos have presented some evidence of unconscionable action.

It is not enough that the Castillos merely prove an unconscionable action or course of action by Latham, however. Latham's unconscionable action must have been the producing cause of actual damages. TEX. BUS. & COM.CODE § 17.50(a). Latham argues that the Castillos cannot recover mental anguish damages under the DTPA without first proving an economic injury. We disagree.

■ Section 17.50(a) of the DTPA, as it appeared when this suit was filed, indicated that "[a] consumer may maintain an action where any of the following constitute a producing cause of *actual damages*." TEX. BUS. & COM.CODE § 17.50(a) (emphasis added).[3] We have stated that the term "actual damages," as used in the DTPA, means those recoverable at common law. *Brown v. American Transfer & Storage Co.*, 601 S.W.2d 931, 939 (Tex.1980). It is axiomatic that mental anguish damages *are* actual damages recoverable at common law for "some common law torts ..., and by analogy for knowing violations of certain statutes such as the Deceptive Trade Practices Act." *City of Tyler v. Likes*, 962 S.W.2d 489, 495 (Tex. 1997) (citations omitted). Therefore, the Castillos do not have to first prove that they have suffered economic damages in order to recover mental anguish damages. The Castillos have satisfied their burden on the damages element of a DTPA cause of action if they have presented some evidence of mental anguish.

In *Parkway Co. v. Woodruff*, 901 S.W.2d 434 (Tex.1995), we established the evidentiary requirements for recovery of mental anguish damages. To survive a legal sufficiency challenge, plaintiffs must present "direct evidence of the nature, duration, and severity of their mental anguish, thus establishing a substantial disruption in the plaintiffs' daily

---

**3.** In 1995, the Legislature amended section 17.50(a) to provide that "[a] consumer may maintain an action where any of the following constitute a producing cause of economic damages *or damages for mental anguish:* ... (3) any unconscionable action or course of action by any person." Act of May 19, 1995, 74th Leg., R.S., ch. 414, § 5, 1995 Tex. Gen. Laws 2988, 2992 (codified at TEX. BUS. & COM.CODE § 17.50(a)(3)).

routine." *Id.* at 444. If there is no direct evidence, the Court will apply "traditional 'no evidence' standards to determine whether the record reveals any evidence of 'a high degree of mental pain and distress' that is 'more than mere worry, anxiety, vexation, embarrassment, or anger' to support any award of damages." *Id.* (citation omitted).

The plaintiffs in *Parkway* alleged that they were "hot," "very disturbed," "not pleased," and "upset." *Id.* at 445. We held that these allegations were "mere emotions" that did not rise to a compensable level. *Id.; see also Saenz v. Fidelity & Guar. Ins. Underwriters,* 925 S.W.2d 607, 614 (Tex.1996) (holding that plaintiff's allegations that she "worried ... a lot" did not rise to a compensable level under *Parkway* ); *Republic Ins. Co. v. Stoker,* 903 S.W.2d 338, 342 (Tex.1995) (Spector, J., concurring) (stating that plaintiff's allegations that she was "very upset" by the offending conduct did not rise to the level of any evidence of compensable mental anguish required under *Parkway* ). In each of these cases, the plaintiffs' evidence of mental anguish amounted to "mere emotions." The mental anguish testimony in this record, however, exceeds that in *Parkway, Saenz,* and *Stoker.*

For example, at trial Ernest Castillo testified that because Latham told them he had filed the medical malpractice suit when in fact he had not:

A  Well, it made me throw up.

Q  Made you sick?

A  Sick, nervous, mad.

Q  Tell the jury how you felt about that, what it did to you.

A  It just—it just hurt me a lot because I trusted in him and I—and if I had known, I would have looked for more lawyers. And he promised me he was going [to] do it, and I trusted him to do it. Because of what they had done to my daughters, I would have never stopped; what the doctors done, I would have never stopped.

Audona Castillo testified at trial:

A  I—my heart was broken. I was devastated, I felt physically ill.

In sum, there is some evidence that Latham's conduct caused the Castillos a "high degree of mental pain and distress" that a jury could consider. We are confident that the trial judge will instruct the jury to differentiate between the mental anguish the Castillos suffered because of their daughters' deaths, which is not compensable in this suit, and that they may have suffered because of Latham's actions, for which the Castillos may be compensated.

The Castillos have presented some evidence of each element of their DTPA cause of action and the trial court erred in directing a verdict against them on the DTPA claim. We therefore remand this claim to the trial court for a new trial.

### B.

The Castillos also complained in the court of appeals that the trial court erred in granting a directed verdict on their fraudulent misrepresentation and breach of contract claims. The court of appeals sustained these points of error without discussion and remanded them to the trial court. The court of appeals erred by not discussing issues necessary to final disposition of the appeal. *See* TEX.R.APP. P. 47.1. Upon our consideration of these issues, we find no evidence to support these claims.

Under common law, two measures of damages are available for fraudulent misrepresentation: (1) the "out of pocket" measure, which is the "difference between the value of that which was parted with and the value of that which was received"; and (2) the "benefit of the bargain" measure, which is the difference between the value represented and the value actually received. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.,* 960 S.W.2d 41, 49 (Tex. 1998); *W.O. Bankston Nissan, Inc. v. Walters,* 754 S.W.2d 127, 128 (Tex.1988) (citing *Leyendecker & Assocs., Inc. v. Wechter,* 683 S.W.2d 369, 373 (Tex.1984)). A plaintiff may recover either the out of pocket or the benefit of the bargain damages, whichever is greater. *Arthur Andersen & Co. v. Perry Equip. Corp.,* 945 S.W.2d 812, 817 (Tex.1997). The Castillos have not pleaded or proved either of these types of damages.

The Castillos presented no evidence of the amount they expected to recover on the medical malpractice claim for Kay's death but for Latham's actions. *See Cosgrove v. Grimes,* 774 S.W.2d 662, 665–66 (Tex.1989). Accordingly, they presented no evidence to support benefit of the bargain damages. The Castillos also did not demonstrate any out of pocket expenses paid to Latham. Therefore, the Castillos have not presented any evidence of recoverable common-law fraudulent misrepresentation damages, and the trial court correctly granted a directed verdict on this claim.

### C.

▉ Finally, the Castillos have alleged a breach of contract claim against Latham for his failure to prosecute the medical malpractice claim for Kay's death. However, because the only damages alleged, mental anguish, are not recoverable under a breach of contract cause of action, this claim also fails. *See Stewart Title Guar. Co. v. Aiello,* 941 S.W.2d 68, 72 (Tex.1997).

### III.

We hold that the Castillos have presented some evidence to support each element of their DTPA cause of action. Therefore, we affirm the court of appeals' remand of the DTPA cause of action. We nevertheless reverse and render judgment that the Castillos take nothing on their fraudulent misrepresentation and breach of contract claims.

OWEN, Justice, joined by GONZALEZ, HECHT and ENOCH, Justices, concurring in part and dissenting in part.

The unconscionability section of the DTPA is not a catchall provision or an open-ended supplement to the laundry list of specifically enumerated violations. Unconscionability is something more than a misrepresentation. The statute requires that the act or practice take advantage of the consumer "to a grossly unfair degree." Until now this Court has equated unconscionability with grossly unfair, flagrant, and unmitigated conduct. It is not grossly unfair or unmitigated conduct when an attorney fails to pursue a meritless suit, even if the attorney represents to the client that suit had been filed when it had not. While such conduct is not to be condoned and would subject the attorney to disciplinary proceedings, it is not unconscionable within the meaning of the DTPA. Nor is there any evidence that the Castillos suffered actual damages as a result of Latham's conduct. Even assuming that mental anguish damages, standing alone, would suffice under the DTPA prior to its amendment in 1995 in a case such as this, there is no evidence that the Castillos' mental anguish was referable to Latham's misrepresentation as distinguished from the mental anguish they suffered from the deaths of their daughters and the fact that they blamed the hospital but had no proof that it was responsible. Accordingly, I dissent from that part of the Court's judgment that remands the unconscionability claims. I concur in Parts I, II B, and II C of the Court's opinion.

### I

We indicated in *Willis v. Maverick,* 760 S.W.2d 642, 647 (Tex.1988), that an attorney may be liable under the DTPA for unconscionable conduct, citing *DeBakey v. Staggs,* 612 S.W.2d 924 (Tex.1981). However, we did not define in *Willis* or *DeBakey* what "unconscionable" meant in the context of a suit against an attorney for professional malfeasance. And in *DeBakey,* we reserved for future determination the "standard of care by which a legal malpractice claim is to be determined" in a DTPA case. 612 S.W.2d at 925.

The Court today places heavy reliance not on our decision in *DeBakey,* but on that of the court of appeals in *DeBakey,* even though we expressly called into question the precedential value of the court of appeals' determination that the attorney's misfeasance rose to the level of unconscionability. *See id.* The holding today is contrary to prior decisions of this Court that have more narrowly defined what is meant by "unconscionable action" within the meaning of the DTPA.

We had the opportunity in *Chastain v. Koonce,* 700 S.W.2d 579, 583 (Tex.1985), to consider what section 17.45(5) of the DTPA means when it says that an act or practice must "take[ ] advantage ... to a grossly unfair degree" to be unconscionable. In

*Chastain*, a jury had found that false statements and threats made by sellers of land to purchasers and to residents in the area were unconscionable. The court of appeals reversed, finding no evidence of unconscionable conduct. We agreed and held that evidence that a defendant "simply ... took unfair advantage" is not enough. *Id.* at 582. The resulting unfairness must be "grossly unfair," which means "glaringly noticeable, flagrant, complete and unmitigated." *Id.* at 584.

In its decision in this case, the Court seems to equate "unconscionability" with "deception" when it says that Latham's misrepresentation "is the difference between negligent conduct and deceptive conduct." 972 S.W.2d at 69. But if every misrepresentation and deceptive act could also constitute an unconscionable act, then the laundry list violations in section 17.46(b), which include numerous specific representations and deceptive acts, would be redundant. *See* Tex. Bus. & Com.Code § 17.46(b)(1)-(25).

More than a decade ago, we held that not every misrepresentation of fact, even an intentional one, constitutes unconscionable conduct. *See Chastain*, 700 S.W.2d at 582–83. We explained that "[a]lthough knowledge and intent may make an act unconscionable, there must be some other means of distinction as well." *Id.* at 582. The test is whether the consumer was taken advantage of to a grossly unfair degree. *Id.* "This should be determined by examining the entire transaction and not by inquiring whether the defendant intended to take advantage of the consumer or acted with knowledge or conscious indifference." *Id.* at 583. The misrepresentation in this case cannot be distinguished

from those in *Chastain*, which we held were not unconscionable under the DTPA.

The transaction between the Castillos and Latham did not take advantage of the Castillos and was not grossly unfair. Latham certainly gained no advantage. There is no evidence that he was ever paid a fee or that the Castillos agreed to pay a fee other than one contingent on the success of the suit against the hospital. And how were the Castillos disadvantaged if their claims against the hospital had no merit? While Latham's conduct was wrong and unethical, it is not actionable under section 17.45(5) of the DTPA because it is not grossly unfair to represent that a suit that has no merit has been filed when it has not.

## II

As alluded above, the Castillos have failed to offer any evidence that they were harmed by their attorney's misrepresentation. Harm is a prerequisite to recovery under the DTPA. The pre–1995 version of the DTPA, under which the Castillos sued, required a consumer to demonstrate that the unconscionable act was "a producing cause of actual damages."[1] The definition of "unconscionable" also embodies a requirement that a loss result from the conduct: " 'Unconscionable action or course of action' means an act or practice which, to a person's *detriment* ... takes advantage ... to a grossly unfair degree." Former Tex. Bus. & Com.Code § 17.45(5) (emphasis added).[2] There is no evidence of actual damages in this case. There is no evidence that, had the suit been timely filed as Latham represented that it had, the Castillos would have recovered.

---

1. Act of May 16, 1979, 66th Leg., R.S., ch. 603, § 4, 1979 Tex. Gen. Laws 1327, 1329 (amended 1995) (current version at Tex. Bus. & Com.Code § 17.50(a)(1)(3)).
The DTPA was amended in 1995 and now provides:
(a) A consumer may maintain an action where any of the following constitute a producing cause of economic damages or damages for mental anguish: * * *

(3) any unconscionable act or course of action by any person[.] * * *

(b) In a suit filed under this section, each consumer who prevails may obtain:

(1) the amount of economic damages found by the trier of fact. If the trier of fact finds that the conduct of the defendant was committed knowingly, the consumer may also recover damages for mental anguish, as found by the trier of fact, and the trier of fact may award not more than three times the amount of economic damages....
Tex. Bus. & Com.Code § 17.50.

2. Act of May 10, 1977, 65th Leg., R.S., ch. 216, § 1, 1977 Tex. Gen. Laws 600, 600 (amended 1995).

The Castillos offered no evidence that their claims against the hospital had any merit at all. To the contrary, the Castillos testified that they had consulted numerous lawyers before they met with Latham and had been turned down by all of them. One of the attorneys they attempted to hire advised them in writing that the case had no merit.

The Castillos contend that the loss of a "day in court" was enough, and the Court implicitly accepts this argument when it observes that the Castillos "lost the opportunity to prosecute their claim against the hospital for Kay's death." 972 S.W.2d at 68. The ability to have one's claim heard is a valuable right in our system of justice, but it does not follow that liability and damages should be imposed in every case in which a party is deprived of the opportunity to present a claim. If there is no evidence that a claim had merit, failing to file a suit on that claim does not fall within the types of conduct that the Legislature intended to reach under the DTPA. Even when there is a tangible, measurable loss, not all improper conduct falls within the ambit of the DTPA. For example, we have long recognized that "mere breach of contract, without more, does not constitute a 'false, misleading or deceptive act.'" *Ashford Dev., Inc. v. USLife Real Estate Servs. Corp.*, 661 S.W.2d 933, 935 (Tex.1983); *see also Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 14 (Tex.1996) (holding misrepresentation that ad would be placed in yellow pages was mere breach of contract and not actionable under the DTPA).

The "day-in-court" argument fails for an even more fundamental reason. The Castillos had the opportunity to prove in their suit against Latham that the hospital had committed professional malpractice or had otherwise breached a duty to Kay that resulted in injury to her and ultimately in her death. They had their day in court.

The Court's failure to require the Castillos to prove that they lost a *meritorious* claim because of Latham's representation is also at odds with overarching Legislative policy as expressed in other statutes. It seems incongruous to me that the Legislature intended to authorize the recovery of damages and potential treble damages under the DTPA for failing to file a suit that had no merit, even if the attorney falsely stated that suit had been filed. Legislative policy discourages the filing of meritless suits, particularly medical malpractice suits. For example, the Legislature requires a plaintiff asserting a medical malpractice claim to come forward within 180 days after suit is filed with an expert's report that sets forth the standard of care, how that standard was breached, and causation. *See* TEX.REV.CIV. STAT. art. 4590i, § 13.01. The statute directs that the suit must be dismissed if a report is not filed, and the plaintiff is obligated to pay the other side's attorney's fees and court costs. *See id.* § 13.01(e). Although this statute was enacted after the events in this case took place and would not have been applied to the Castillos' suit against the hospital, it demonstrates that the Legislature demands that there be some merit to a medical malpractice claim before it can be asserted. There is no indication that the Castillos' claims against the hospital had any merit at all. Yet, the Court would allow the recovery of damages from Latham when the suit he failed to file bordered on frivolous.

### III

Lacking any evidence of actual damages, the Court concludes that mental anguish damages alone will support a recovery under the pre–1995 version of the DTPA and that there is some evidence of compensable mental anguish damages. I agree with the Court that actual damages within the meaning of the DTPA means those available at common law. *See* 972 S.W.2d at 69; *see also Brown v. American Transfer & Storage Co.*, 601 S.W.2d 931, 939 (Tex.), *cert. denied*, 449 U.S. 1015, 101 S.Ct. 575, 66 L.Ed.2d 474 (1980). But the mental anguish that the Castillos unquestionably suffered was not caused by Latham's misrepresentation, and accordingly, I would not reach the issue of whether, in this type of case, the Castillos could recover mental anguish for Latham's conduct absent a showing of actual damages. When the Castillos' testimony is considered in context, it can be seen that their mental anguish stemmed from the unfortunate deaths of their daughters and the Castillos' desire to

hold the hospital accountable, not from Latham's misrepresentation.

The Court has blurred the distinct line between the modicum of anguish the Castillos suffered over what Latham said and did, which is not compensable under our decision in *Parkway Co. v. Woodruff,* 901 S.W.2d 434, 444 (Tex.1995), and the mental anguish damages caused by the deaths of their daughters that unquestionably would be recoverable in a suit against one who had caused those deaths or in a suit against one who, through legal malpractice, prevented the Castillos from recovering for their anguish. The emotions aroused by Latham's misrepresentation are of a wholly different character from the mental anguish caused by the loss of their twins. We held in *Parkway:*

> When a challenge is made to the sufficiency of the evidence to go to the jury or to support the jury's finding, ... [t]he reviewing court must distinguish between shades and degrees of emotion. These distinctions are critical under our substantive law because evidence of lesser reactions cannot support an award of mental anguish damages.

> Under this admittedly nebulous definition and the traditional standard of review, it is nevertheless clear that an award of mental anguish damages will survive a legal sufficiency challenge when the plaintiffs have introduced direct evidence of the nature, duration, and severity of their mental anguish, thus establishing a substantial disruption in the plaintiffs' daily routine.

*Id.* at 444.

Latham's misrepresentation did not result in "a substantial disruption in the plaintiffs' daily routine." *Id.* Nor did the Castillos offer evidence of the "nature, duration, and severity of their anguish" from Latham's misrepresentation as required by *Parkway.* *Id.* We held in *Parkway* that testimony by the plaintiffs that the flooding of their home changed their lives, that the husband would become very quiet when he came home, and that he was very disturbed over the flooding did not surmount the evidentiary hurdle for legally sufficient proof of mental anguish damages. *Id.* at 445.

When the record in this case is consulted, it is beyond dispute that the only mental anguish that meets the *Parkway* standard was not caused by Latham. It was caused by the deaths of the Castillos' daughters and the nonexistence of any evidence that the hospital was responsible. Ernest Castillo testified:

Q When he told you that it was your fault, in effect, that the statute of limitations had gone by, how did that make you feel? What effect did that have on you?

A Well, it made me throw up.

Q Made you sick?

A Sick, nervous, mad.

Q Tell the jury how you felt about that, what it did to you.

A [I]t just hurt me a lot because I trusted in him and I—and if I had known, I would have looked for more lawyers. And he promised me he was going [to] do it, and I trusted him to do it. Because [of] what they had done to my daughters, I would have never stopped; what the doctors done, I would have never stopped.

\* \* \*

Q Did it make you nervous?

A Made me nervous that I couldn't get my hands on Driscoll [Hospital]. He let them go, and they did do a lot of damage to my girls.

\* \* \*

A I love my kids so much. What those doctors done, they shouldn't have done, and [Latham] knew it. I had told him, and he said he knew it, too. He said, "I'll help you, Ernest, I will help you," and I trusted him to help me, and he let it go.

Q. Did it break your heart?

A. Yes, sir. I lost two daughters.

Audona Castillo testified:

Q How did this make you feel, that is, what effect did this information have on you?

A I—my heart was broken. I was devastated, I felt physically ill. After—excuse me. After running around so many months in pursuit of a lawyer and trying to beat the statute of limitations and having confided in this man and him having promised me that he could handle it. And my daughter's death, and her disabilities, and the pain she suffered by being blind and—and all the other damages, the seizures, and her very short life of two years; and then he tells me that I don't have anything to hold on to. And it's not as if he could bring her back, but I needed some justice, at least, and I still feel the same way.

The Castillos were distraught because they wanted a court to determine that the hospital was responsible for the pain, suffering, and deaths of their children. But if Latham had filed suit, there is no evidence that a court would have found the hospital responsible or even that there was a fact question for the jury. There was no evidence that the Castillos' desire to establish the hospital's culpability and to require it to respond in damages for negligence would have been satisfied. Further, even assuming that all the Castillos wanted was to prove that the hospital was at fault rather than to recover damages from the hospital, the Castillos had the opportunity in this suit against Latham to present the same case against the hospital that they would have presented had Latham filed suit. The Castillos have not shown that Latham's failure to file suit prevented them from vindicating their position that the hospital was to blame for their daughters' deaths.

In construing the DTPA to allow recovery for Latham's improper conduct, the Court has ignored well-established principles of law and the record in this case and has failed to effectuate the intent of the Legislature.

\* \* \* \* \*

I agree with the Court that because the Castillos failed to prove any proper measure of damages under their claims for breach of contract and fraud, the court of appeals erred in remanding those claims. But I would hold that the trial court did not err in directing a verdict against the Castillos on all of their claims, including unconscionability, and accordingly, I would reverse the judgment of the court of appeals and render judgment that the Castillos take nothing.