In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________


 

NO. 09-03-217 CV


____________________



TMC FOODS L.L.C. d/b/a POPEYE'S FRIED CHICKEN, Appellant



V.



JEWEL MASON, Appellee






On Appeal from the 172nd District Court


Jefferson County, Texas


Trial Court Cause No. E-163,968






MEMORANDUM OPINION


 Alleging her employment was terminated in retaliation for filing and pursuing a
workers' compensation claim, Jewel Mason sued Popeye's, (1) her former employer. See Tex.
Lab. Code Ann. § 451.001 (Vernon 1996) (An employee may not be discharged because she
filed a workers' compensation claim in good faith.). The jury found Popeye's violated
section 451.001 of the Labor Code and awarded Mason damages, including $1,500 for
mental anguish. The jury further found the harm to Mason resulted from malice and awarded
$25,000 in exemplary damages. On appeal, Popeye's challenges the awards for exemplary
damages and mental anguish on sufficiency grounds.

 Popeye's argues the evidence is insufficient to prove it acted with malice when it
terminated Mason's employment and therefore the exemplary damages award cannot stand. 
The Texas Supreme Court has determined that, although a violation of the statute is in the
nature of an intentional tort, punitive damages are not appropriate for every violation of
section 451.001; an employee must show actual malice to recover punitive damages. See
Continental Coffee Prods. Co. v. Cazarez, 937 S.W.2d 444, 453-54 (Tex. 1996). "'[T]he fact
that an act is unlawful is not of itself ground for an award of exemplary or punitive
damages.'" Id. at 454 (quoting Jones v. Ross, 141 Tex. 415, 173 S.W.2d 1022, 1024 (1943)
(other citations omitted)). 

 The trial court submitted to the jury the following definition:

 "Malice" means:


 a specific intent by [Popeye's] to cause substantial injury
to Jewel Mason; or 


 (b) an act or omission by [Popeye's],


 
 which, when viewed objectively from the
standpoint of [Popeye's] at the time of its
occurrence, involved an extreme degree of risk,
considering the probability and magnitude of the
potential harm to others; and
 


 (ii) of which [Popeye's] had actual, subjective
awareness of the risk involved, but nevertheless
proceeded with conscious indifference to the
rights, safety, or welfare of others. 


See Act of April 11, 1995, 74th Leg., R.S., ch. 19, § 1, sec. 41.001(7), 1995 Tex.
Gen. Laws. 108, 109 (amended 2003) (current version at Tex. Civ. Prac. & Rem.
Code Ann. § 41.001(7) (Vernon Supp. 2004)). 

 This definition differs from the "actual malice" standard set out by the
Supreme Court in Continental Coffee, 937 S.W.2d at 452, 454. There, the Court
defined the "malice" necessary to support a punitive damages award in a workers'
compensation wrongful discharge case as being "ill-will, spite, evil motive, or
purposing the injuring of another." Id. at 452 (quoting Clements v. Withers, 437
S.W.2d 818, 822 (Tex. 1969)). In City of Fort Worth v. Zimlich, the Supreme
Court noted it had defined "malice" in Continental Coffee, but in view of the Zimlich
trial court's submission, without objection, of a different malice definition, the
Supreme Court was bound to review the evidence in light of the one submitted. 
See Zimlich, 29 S.W.3d 62, 71 (Tex. 2000). Zimlich involved the Whistleblower
Act, but we believe the approach should be the same here; because the parties did
not object to the definition submitted, we review the evidence of malice in light
of the submitted definition. 

 Malice has to be proved by clear and convincing evidence -- the "measure
or degree of proof that will produce in the mind of the trier of fact a firm belief or
conviction as to the truth of the allegations sought to be established." See Tex.
Civ. Prac. & Rem. Code Ann. §§ 41.001(2), 41.003(a)(2), (b) (Vernon Supp.
2004). Clear and convincing evidence is an intermediate burden of proof, less
than the beyond a reasonable doubt standard but greater than the usual standard
in civil cases of preponderance of the evidence. North Am. Van Lines, Inc. v.
Emmons, 50 S.W.3d 103, 127 (Tex. App.-- Beaumont 2001, pet. denied). In a
legal sufficiency review where the burden of proof is by clear and convincing
evidence, a court looks at all the evidence in the light most favorable to the
finding to determine whether a reasonable trier of fact could have formed a firm
belief or conviction that the finding was true. In re J.F.C., 96 S.W.3d 256, 266
(Tex. 2002). The reviewing court must assume the factfinder resolved disputed
facts in favor of the finding, if a reasonable factfinder could do so, and must
disregard all contrary evidence, except for undisputed facts, that a reasonable
factfinder could have disbelieved or found to be incredible. Id. 

 Under subsection (a) of the definition submitted to the jury, we look for
clear and convincing evidence that Popeye's engaged in wrongful conduct with the
specific intent to cause Mason substantial injury. Under section (b) of the
definition, we look for clear and convincing evidence that Popeye's, with conscious
indifference to Mason's rights, safety, or welfare, carried out an act involving an
extreme degree of risk of probable injury with actual awareness of the risk involved
and with conscious indifference. See Zimlich, 29 S.W.3d at 71. 

 Prior to Mason's work-related injury, her employer twice reprimanded her: once on
May 9, 2000, for exceeding the labor budget and again on May 11, 2000, for having a $100
shortage. Mason agreed with both reprimands. Popeye's put her on work-related probation. 
She was told the next violation would result in her termination. On May 17, Mason sustained
an on-the-job injury that she reported the next morning to Linda Wallace, the restaurant's
general manager. Following Wallace's instructions, Mason then reported the incident to
Jeanne Chiriboga, Popeye's Human Resource Coordinator. Mason first sought medical
treatment on May 20 at St. Elizabeth Hospital and then on May 23 went to Tower Medical. 
 Mason returned to work for light duty on May 23 and was "counseled" at a meeting
with Wallace and Ken Richings, the Senior District Manager, for failing to properly report
the May 17 injury. She testified she was not required to immediately report the injury to
Wallace, because Popeye's Rules of Conduct required the report be given to the manager on
duty, and Mason was the manager on duty. Mason testified that after Wallace left the May
23rd meeting, Richings told Mason he did not appreciate her filing a workers' compensation
claim and he was going to find a way to get rid of her. At a May 26th meeting with Wallace
and Richings, Mason was informed of the following violations: (1) she changed the
automatic review to one camera; (2) she was left alone in the restaurant after the employees
cleaned up and left; (3) she left the store with food. Mason did not recall the three violations
but did not dispute they occurred. At trial she also admitted to being rude to a customer on
a prior occasion -- conduct the management was also aware of prior to May 29. 

 On May 29, Mason reported to work but was not feeling well. She left the restaurant 
and went to the emergency room at St. Elizabeth Hospital. The doctor told her she was not
to return to work until a re-evaluation on June 5. After the medical treatment, Mason called
Wallace, who told her Richings wanted the keys brought back to the restaurant. That
evening, Mason returned the keys, along with a copy of the doctor's orders. The next
communication Mason had from Popeye's was a letter informing her she was terminated. 
Dated May 31, 2000, the letter stated Mason's termination was effective May 29, 2000. The
letter further stated Mason was being terminated for "once again" violating company policy
by leaving company premises during working hours without the permission of the immediate
supervisor. The letter stated Mason "walked out of the store just after reporting to work on
May 29, 2000 telling [Wallace] (after she asked you [where] you were going) that you were
going to St. Elizabeth's." Further, the letter noted that when being counseled for a policy
violation on May 23, Mason was informed the next violation would result in termination. 

 From this evidence the jury could infer that Popeye's did not want Mason to file a
workers' compensation claim and that the company found reasons to terminate her for having
done so. The evidence shows a violation of the statute. A violation of section 451.001
is in the nature of an intentional tort; and if violation of the statute is all that is
required, the evidence here would support a punitive damage award. See generally
Contintenal Coffee, 937 S.W.2d at 453-54. Rejecting that possibility in Continental
Coffee, the Supreme Court held that a violation alone is not sufficient to support
a punitive damages award. Actual malice must be shown. Id. In viewing all the
evidence in the light most favorable to the jury's finding, we conclude that the
evidence is legally insufficient to prove malice. The evidence does not demonstrate any
animosity toward Mason personally. And, considering the definition of malice submitted to
the jury here, the acts of Popeye's employees do not show conduct that created the likelihood
of substantial injury to Mason, or that Popeye's intended substantial injury or had actual
awareness of an extreme degree of risk of harm but nevertheless proceeded with conscious
indifference. See generally C & D Robotics, Inc. v. Mann, 47 S.W.3d 194, 201-202 (Tex.
App.--Texarkana 2001, no pet.)(applying Continental Coffee); Stevens v. National Educ.
Ctrs., Inc., 990 S.W2d 374, 377 (Tex. App.--Houston [14th Dist.] 1999), pet. denied, 11
S.W.3d 185 (Tex. 2000). Issue one is sustained. 

 Popeye's second issue contends the evidence is insufficient to support the amount of
exemplary damages assessed by the jury. Because of our disposition of Popeye's first issue,
it is unnecessary to address issue two.

 In its final issue, Popeye's argues Mason provided no evidence of compensable mental
anguish damages. We are to review the evidence in a light that tends to support the finding
of the disputed fact and disregard all evidence and inferences to the contrary, except for
undisputed facts. See Zimlich, 29 S.W.3d at 69. Mason testified how she felt after she was
fired:

 I felt -- I was pretty devastated because that was my -- I was the sole
provider at my household. I have a family that I was supporting. And it was
humiliating. I felt -- you know, I don't know, I just felt that I was injured at --
at my business, trying to do this business. And I was terminated for that. 
That's how I felt.


 I felt really upset about the situation. I didn't have -- I didn't feel like
I had any type of -- I didn't feel like I had any kind of -- anything to say about
the situation. I didn't have anybody to discuss -- no one discussed anything
with me. It was just like sledge hammer. You're fired. I was devastated. 
That was my -- my livelihood more or less at the time. And I really did enjoy
that job. 

 

 . . . .


 [I] just really felt, you know, a lot of distrust for management after that
and just in general kind of devastated.


 . . . .


 [I]t was just really devastating, I mean. Just to have your livelihood just
snatched away from you. It was pretty humiliating. It was devastating.


 To obtain mental anguish damages, a plaintiff must either introduce direct evidence
of the nature, duration, and severity of her mental anguish, establishing a substantial
disruption in her daily routine, or must present evidence of a high degree of mental pain and
distress that is more than mere worry, anxiety, vexation, embarrassment, or anger. Parkway
Co. v. Woodruff, 901 S.W.2d 434, 444 (Tex. 1995). Conclusory testimony of emotion is
insufficient to establish compensable mental anguish. See Gunn Infiniti, Inc. v. O'Byrne, 996
S.W.2d 854, 861 (Tex. 1999) (conclusory testimony); Latham v. Castillo, 972 S.W.2d 66,
70 (Tex. 1998) ("mere emotions").

 The Supreme Court recently restated its holding that compensation for mental anguish
requires evidence of "substantial" disruption in daily routine or "a high degree of mental pain
and distress." See Bentley v. Bunton, 94 S.W.3d 561, 606 (Tex. 2002) (quoting Saenz v.
Fidelity & Guar. Ins. Underwriters, 925 S.W.2d 607, 614 (Tex. 1996) and Parkway, 901
S.W.2d at 444)); Household Credit Servs., Inc. v. Driscol, 989 S.W.2d 72, 91 (Tex. App.--El
Paso 1998, pet. denied). In Bunton, the Court found the evidence met the required standard:
the plaintiff was deprived of sleep; the experience caused him embarrassment in the
community, disrupted his family life, and distressed his children at school; friends testified
he had been depressed, his honor and integrity had been impugned, and his family had
suffered. Bunton, 94 S.W.3d at 606-07. Likewise in Latham v. Castillo, the Court found
there was some evidence of a high degree of mental pain and distress. 972 S.W.2d at 70. 
The Castillos testified the defendant's conduct "made [Ernest] throw up," made him "[s]ick,
nervous, mad[,]" "hurt [him] a lot[,]" broke [Audona's] heart, and left her "devastated" and
feeling "physically ill." Id. In contrast, the Court in Gunn Infiniti found plaintiff's testimony
-- that he experienced severe disappointment, constant mental sensation of pain, a lot of
anguish and grief, embarrassment, and ridicule -- did not rise to the level required to sustain
a verdict for mental anguish damages. See Gunn Infiniti, Inc., 996 S.W.2d at 860. Further,
there was no evidence of any disruption in plaintiff's daily routine. Absent what Parkway
calls "adequate details to assess mental anguish claims[,]" the evidence is legally insufficient
to support an award of mental anguish. Parkway, 901 S.W.2d at 444. 

 Mason testified she was devastated, "really upset," and humiliated, and she explained
that the cause of those feelings was Popeye's termination of her employment. As in Gunn
Infiniti and Parkway, conclusory testimony of her emotions does not provide "adequate
details to assess mental anguish." See Gunn Infiniti, Inc., 996 S.W.2d at 860; Parkway, 901
S.W.2d at 445. She presented no testimony of a "substantial disruption in her daily routine"
caused by her emotional injury; she offered no specifics from which the jury could assess her
injury and damages. Without this evidence, the jury was left to speculate on the nature,
duration, and severity of the mental injury. See id. The evidence is legally insufficient to
support an award of mental anguish damages. Issue three is sustained. 

 We modify the judgment of the trial court to delete the award of mental anguish
damages and the exemplary damages award. The judgment is affirmed as modified.

 AFFIRMED AS MODIFIED.




 DAVID B. GAULTNEY

 Justice


Submitted on January 6, 2004

Opinion Delivered April 29, 2004 


Before McKeithen, C.J., Burgess and Gaultney, JJ.

CONCURRING AND DISSENTING OPINION


 I concur with the majority's analysis and disposition of issues one and two. I
respectfully dissent to the resolution of issue three. Reviewing the same evidence as the
majority, I would find the evidence presented at trial provides some evidence to support
the jury's finding on mental anguish. See Texas Animal Health Comm'n v. Garza, 27
S.W.3d 54, 63 (Tex. App.--San Antonio 2000, pet. denied). In reviewing only the
evidence and inferences that tend to support the jury's findings, I would conclude there
was more than a scintilla of evidence for the jury to decide that Mason suffered
compensable mental anguish. See Sherman v. First Nat'l Bank in Center, Texas, 760
S.W.2d 240, 242 (Tex. 1988). Therefore, I would sustain issue three and reform the
judgment of the trial court to delete only the exemplary damages award.


 ____________________________

 DON BURGESS

 Justice


Opinion Delivered

April 29, 2004


 
1. TMC Foods L.L.C. d/b/a Popeye's Fried Chicken.