# NO. 12-24-00015-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *MONICA TURNER,*<br>*APPELLANT* | *§* | *APPEAL FROM THE* |
| *V.* | *§* | *COUNTY COURT AT LAW NO. 2* |
| *MELINDA CASTILLO,*<br>*APPELLEE* | *§* | *GREGG COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Monica Turner, acting pro se,[1] appeals the trial court's judgment requiring her to pay $10,000 plus court costs to Appellee, Melinda Castillo, in Turner's lawsuit regarding her purchase of a wrecker truck from Castillo. In two issues, Turner contends that (1) the trial court erred "by not recognizing that the contract was voidable due to [Castillo's] fraudulent misrepresentation" and (2) the trial court's ruling unjustly enriched Castillo. We affirm.

### BACKGROUND

Turner filed suit against Castillo in Justice Court, alleging that Castillo sold her a 2001 Ford F450 wrecker truck "under the false pretense [that Castillo] was the lawful owner with a free and clear title[.]" Turner contended that Castillo misled her by failing to disclose that the vehicle was encumbered by a lien and sought damages of $13,800, as well as title to the truck. Turner further argued that Castillo committed theft and engaged in deceptive business practices, and that the contract is invalid. In response, Castillo argued that Turner is not the legal owner of the vehicle

---

[1] Turner was represented by counsel at trial but is pro se on appeal.

because she failed to pay the balance owed. Castillo pleaded that she kept the lien on the vehicle to prevent Turner from stealing it "by forcing the bonding company to contact the lienholder" before issuing Turner a bonded title. Castillo also asserted that Turner breached the parties' amended contract by failing to obtain a commercial insurance policy on the vehicle. After the Justice Court for Precinct One in Gregg County found in favor of Castillo, Turner appealed to the County Court at Law for a trial de novo.[2]

At the bench trial, Castillo testified that Turner approached her about purchasing a wrecker and offered to make a downpayment if Turner would hold the vehicle.[3] Castillo explained that she did not want to finance the wrecker because she intended to use the funds from the sale to purchase another wrecker, but she "felt for" Turner and wanted to help her start a business. According to Castillo, the first contract with Turner was "invalid because the funds did not go through to hold the wrecker[,]" and Turner subsequently offered to pay Castillo half the price up front and to pay the rest within thirty days. The parties' second agreement, entitled "Car Bill of Sale" and dated April 22, 2023, indicates that the purchase price was $18,000. Handwritten notations at the bottom of the agreement stated that (1) Turner paid $8,900 to Castillo by check and $750 in cash; (2) Turner would pay the remaining balance of $7,000 within thirty days; (3) Turner would carry insurance on the vehicle as of April 24, 2023; and (4) Turner would pay all tolls until she made her final payment to Castillo.

According to Castillo, Turner failed to obtain insurance on the vehicle, so Castillo continued to pay for insurance. Castillo provided a document from her insurer indicating that she paid a premium of $7,531, as well as an additional charge of $11, and she testified that the document accurately reflected the amount she paid for insurance on the vehicle. Castillo testified that she received only $9,000 of the purchase price from Turner. After Turner failed to make the required payment, Castillo reported the vehicle as stolen. Castillo explained as follows:

> [Turner] didn't think I was ever going to give her the title because there was a lien on the title. I've sold seven wreckers this way and bought wreckers. We meet at the bank. We do the transfer. I or the person buying is handed the title. . . . Once she paid me in full, I would have handed her the title. . . . However, when she went to file for a bonded title on the wrecker, I left [a] $159 balance on the lien because I was fearful that if there wasn't a balance left on the lien, then she would have been successful at filing her bonded title.

---

[2] Because an appeal from a justice of the peace court is by trial de novo, we refer to the County Court at Law No. 2 as "the trial court." *See* TEX. R. CIV. P. 506.3.

[3] Castillo acted pro se in the trial court but is represented by counsel on appeal.

During cross-examination, Castillo testified that she received a payment from Turner via Zelle in the amount of $1,000, as well as money gram in the amount of $8,900. Castillo explained that she did not recall Turner paying her $750 in cash. Castillo agreed that the parties' first agreement, dated April 13, 2023, stated that the seller warrants that she is the lawful owner of the vehicle, "free and clear of mortgages and liens." Castillo also agreed that Turner already tendered $11,650 to her. When questioned by the trial judge, Castillo agreed that the remaining balance Turner owes is $7,000. Castillo explained that if Turner paid the balance within thirty days, she would have provided the title to Turner. Castillo stated that "[i]t was never anything malicious."

Turner testified that she saw the wrecker listed for sale on social media, and the parties ultimately agreed on a downpayment of $5,000. According to Turner, the parties further agreed that once Turner obtained a driver, she would meet Castillo to "proceed with the exchange of the truck." When asked about the failed transfer of funds, Turner testified that banks only allow $1,000 in Zelle payments per day. According to Turner, "something was wrong with [Castillo's] account," and Castillo's bank rejected the Zelle transfer, so the bank returned $4,000 to Turner. Turner testified that the $4,000 was never returned to her account. Turner stated that the rejected Zelle payment was for $4,000 rather than $1,000, and she remedied the problem by paying Castillo $8,900 via money order.

Turner explained that she also paid Castillo $1,000 on May 26, 2023, but did not make further payments after that date because Castillo "was acting a little weird and saying that she was going to report the truck stolen." Turner testified that she went to the Department of Motor Vehicles in Dallas, provided the truck's vehicle identification number, and received documents indicating that a lien existed on the vehicle. Turner stated that upon learning of the lien, she believed "everything that [Castillo] had stated was fraud, . . . [and] she deceived me. She never had title in the beginning." Turner explained that she wanted Castillo to either refund her money or remove the lien and accept additional payments, and she estimated that she owes Castillo approximately $5,000. During cross-examination, Turner denied attempting to obtain a bonded title on the wrecker.

After hearing closing arguments, the trial judge stated as follows:

> The issue with regard to the lien, that's just a very common situation. Houses get sold on a regular basis, [with the] representation that they'll be conveyed free and clear of any liens, encumbrances, et cetera, even though there's a mortgage on the house until the time of closing. The fact that there's a lien on the truck in and of itself is not an opportunity to simply cancel the agreement…. And just

3

because there is a lien being held by somebody for an amount in and of itself doesn't void a contract. The Court has determined that the amount owed on the contract for the payment of the vehicle is $7,000. The Court is awarding judgment for the $7,000. There is an additional claim for insurance of $7,531. The Court is going to roughly hal[ve] that and award insurance reimbursement of $3,000 to plaintiff. That makes the total payment that needs to be made for a conveyance of title . . . $10,000, and that's going to be the judgment of the Court.

On January 29, 2024, the trial court signed a judgment in favor of Castillo and ordered Turner to pay Castillo $10,000 plus court costs. The record contains neither findings of fact and conclusions of law nor a request for same. This appeal followed.

**FRAUDULENT MISREPRESENTATION AND UNJUST ENRICHMENT**

In issue one, Turner argues that the contract is voidable due to fraudulent misrepresentation, and in issue two, Turner contends the trial court's ruling unjustly enriched Castillo. We will address issues one and two together.

**Applicable Law**

In a bench trial, the trial court, as factfinder, is the sole judge of the credibility of the witnesses and the weight to be assigned to their testimony. *Canal Ins. Co. v. Hopkins*, 238 S.W.3d 549, 556-57 (Tex. App.—Tyler 2007, pet. denied) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005)). The trial judge is free to believe one witness and to disbelieve another, and a reviewing court may not impose its own opinion to the contrary. *Id*. Therefore, we must assume that the factfinder decided all credibility questions in favor of its finding if a reasonable factfinder could do so. *Id*. If a reasonable factfinder could have done so, we must assume that the factfinder chose what testimony to disregard in a way that favored its ruling. *Id*.

**Analysis**

Citing *Italian Cowboy Partners, Limited v. Prudential Insurance Company of America*, 341 S.W.3d 323 (Tex. 2011), Turner argues that a misrepresentation regarding a material fact that is intended to induce another party into a contract constitutes fraud, and the contract is voidable. Specifically, Turner contends that Castillo's "misrepresentation regarding the truck's lien" was a material fact that influenced her decision to purchase the truck, and her contract with Castillo is therefore voidable. Additionally, Turner asserts that a party who was fraudulently induced into a contract may rescind the contract and recover damages, and the trial court's "failure to recognize this principle led to an unjust ruling that benefits the Appellee at Appellant's expense." As support for her argument, Turner cites *Latham v. Castillo* and Section 110.002 of the Texas Civil Practice

4

and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 110.002 (West Supp. 2023); *Latham v. Castillo*, 972 S.W.2d 66 (Tex. 1998).

As Turner points out, fraudulent inducement renders a contract "subject to avoidance" and a plaintiff may recover damages for fraudulent inducement. *See Italian Cowboy*, 341 S.W.3d at 331; *Latham*, 972 S.W.2d at 70; *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 49 (Tex. 1998). We have no quarrel with these propositions. However, Turner fails to provide citations to the record or the exhibits. Nor does she meaningfully discuss or explain the legal basis for her contention that the trial court "disregarded" the law by concluding that Castillo did not make a fraudulent misrepresentation or that the trial court's ruling "unjustly enriched" Castillo. Turner also fails to discuss the elements of fraudulent inducement and unjust enrichment. Moreover, Turner fails to discuss the relevant testimony and trial exhibits. We cannot ascertain whether Turner challenges the legal or factual sufficiency of the evidence supporting the trial court's judgment, the trial court's analysis of the applicable law, or both. Section 110.002 of the Texas Civil Practice and Remedies Code is in a chapter dealing with religious freedom, and it provides as follows:

> (a) This chapter applies to any ordinance, rule, order, decision, practice, or other exercise of governmental authority.
>
> (b) This chapter applies to an act of a government agency, in the exercise of governmental authority, granting or refusing to grant a government benefit to an individual.
>
> (c) This chapter applies to each law of this state unless the law is expressly made exempt from the application of this chapter by reference to this chapter.
>
> (d) For purposes of a state of disaster declared under Chapter 418, Government Code:
>   (1) this chapter is not considered a regulatory statute; and
>   (2) a provision of this chapter may not be suspended.

TEX. CIV. PRAC. & REM. CODE ANN. § 110.002. Turner entirely fails to explain how the statute applies to her arguments on appeal.

An appellate brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and the record. TEX. R. APP. P. 38.1(i). To comply with Rule 38.1, an appellant must cite existing and relevant authority and apply the facts to the cited law to show how the trial court erred. *Id*.; *Arellano v. Magana*, 315 S.W.3d 576, 577 (Tex. App.—El Paso 2010, no pet.) (explaining that appellant bears burden of discussing assertions of error).

5

Although we must liberally construe pro se briefs, pro se litigants are held to the same standards as licensed attorneys and must comply with all applicable rules of procedure; otherwise, pro se litigants would have an unfair advantage over parties represented by counsel. *Muhammed v. Plains Pipeline, L.P.*, No. 12-16-00189-CV, 2017 WL 2665180, at *2 n.3 (Tex. App.—Tyler June 21, 2017, no pet.) (mem. op.); *Giddens v. Brooks*, 92 S.W.3d 878, 880-81 (Tex. App.—Beaumont 2002, pet. denied). Specifically, pro se litigants must comply with the rule requiring adequate briefing and citations to the record. *Redmond v. Kovar*, No. 09-17-00099-CV, 2018 WL 651272, at *2 (Tex. App.—Beaumont Feb. 1, 2018, no pet.) (mem. op.). Bare assertions of error, without sufficient argument or authority, waive error and present nothing for review on appeal. *McKellar v. Cervantes*, 367 S.W.3d 478, 484 n.5 (Tex. App.—Texarkana 2012, no pet.); *Washington v. Bank of N.Y.*, 362 S.W.3d 853, 854 (Tex. App.—Dallas 2012, no pet.). An appellate court has no duty to brief issues for an appellant, and if we were to do so, "we would be abandoning our role as neutral adjudicators and become an advocate for that party." *In re A.E.*, 580 S.W.3d 211, 219 (Tex. App.—Tyler 2019, pet. denied).

Because Turner fails to explain the nature of her challenges to the trial court's ruling, does not discuss the evidence adduced at trial or provide citations to said evidence, and does not apply the law to the facts, we conclude that issues one and two are inadequately briefed and therefore waived.[4] *See* TEX. R. APP. P. 38.1(i); *In re A.E.*, 580 S.W.3d at 219; *Muhammed*, 2017 WL 2665180, at *2 n.3; *McKellar*, 367 S.W.3d at 484 n.5; *Giddens*, 92 S.W.3d at 880-81. Accordingly, we overrule issues one and two.

## DISPOSITION

Having overruled issues one and two, we *affirm* the trial court's judgment.

BRIAN HOYLE
Justice

Opinion delivered August 29, 2024.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

---

[4] For instance, Castillo testified that she was prepared to transfer title to Turner free of the lien when Turner fully paid for the wrecker. The trial court found this evidence credible. Turner does not present argument as to why this evidence is not credible or, if believed, is not fatal to her fraudulent inducement claim.



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**AUGUST 29, 2024**

**NO. 12-24-00015-CV**

**MONICA TURNER,**
Appellant
V.
**MELINDA CASTILLO,**
Appellee

---

Appeal from the County Court at Law No. 2

of Gregg County, Texas (Tr.Ct.No. 2023-0239-C)

---

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED, and DECREED that the judgment of the court below be in all things **affirmed**, and that all costs of this appeal are hereby adjudged against the Appellant, Monica Turner, for which execution may issue, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*