TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00811-CV






United Services Automobile Association/Eugene W. Lambert, Jr., Appellants



v.



Eugene W. Lambert, Jr./United Services Automobile Association, Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT


NO. 95-07804, HONORABLE MARY PEARL WILLIAMS, JUDGE PRESIDING






 This appeal arises from the handling by appellant United Services Automobile
Association ("USAA") of an insurance claim filed by its insured, Eugene W. Lambert, Jr.,
appellee. Lambert filed suit against USAA alleging breach of contract, violations of the Deceptive
Trade Practices Act ("DTPA") and the Insurance Code, and breach of the duty of good faith and
fair dealing. Following a jury trial in which the jury answered most issues against USAA, the trial
court rendered judgment in favor of Lambert based on the DTPA. We will affirm in part, reverse
and render in part, and reverse and remand in part.


FACTUAL AND PROCEDURAL BACKGROUND



 Lambert insures his residence through a Texas Homeowner's Form B Policy issued
by USAA. In mid-1994, Lambert encountered problems with the plumbing in his home. He
consulted a plumbing company and an engineering firm to determine the source and extent of the
problems. Reports issued by the consultants indicated leaking in Lambert's plumbing system. 
Lambert reported these findings to USAA on August 26, and USAA responded by sending Terry
Robinson, an adjuster, to inspect the home on September 1. USAA retained Herndon Plumbing
Company to investigate the leaks and provide a repair estimate. On October 26, 1994, Herndon
issued a report detailing the repairs that needed to be made on the plumbing system at Lambert's
residence. In connection with the report, Herndon bid $16,950 to complete the repairs. Upon
receiving Herndon's report and estimate, Robinson advised Lambert that, given the amount of the
bid and the fact that Herndon was not a local plumber, USAA wanted to get a second estimate. 
USAA did not offer to pay Lambert the amount of the Herndon bid.

 A second bid was requested and received, this time from Friesenhahn Plumbing. 
The Friesenhahn bid, however, was considerably higher than the Herndon bid. On December 13,
Robinson wrote Lambert indicating that USAA was now prepared to pay Lambert the amount of
the lower Herndon bid. On December 15, Robinson received a letter from Lambert advising that
he was attempting to secure a third bid. The two letters apparently crossed in the mail. Robinson
responded in writing that he would either delay payment pending the new bid or pay immediately
based on the Herndon bid. Lambert did not respond to this proposal.

 On January 9, 1995, USAA was contacted by Stabilizing Technology of Texas, Inc.
("STTI") advising that it was now acting as Lambert's public adjuster and general contractor. In
this capacity, STTI requested payment based on the higher Friesenhahn bid. Robinson suggested
that Lambert either accept payment based on the Herndon bid or secure yet another bid from the
Gerloff Company. STTI indicated that it would prefer a bid from Gerloff. The Gerloff bid was
lower than the Herndon bid, whereupon Robinson indicated that USAA now was willing only to
remit payment based on the Gerloff bid. STTI refused to accept the Gerloff bid, complaining that
Gerloff was not in compliance with OSHA standards. By letter dated March 10, Robinson
addressed STTI's OSHA complaints; by letter dated March 13, USAA remitted payment to
Lambert for $15,000, representing the amount of the Gerloff bid minus $250 for Lambert's policy
deductible and $774 for pipe and labor costs that USAA asserted were not covered expenses. 
Lambert accepted this payment.

 Following the $15,000 payment, STTI contacted USAA on two further occasions
requesting additional funds to cover unforeseen problems. On both occasions, USAA issued a
check for additional funds, the first for $1,250 and the second for $840. Thus, USAA's total
payment for Lambert's plumbing claim was $17,090. (1)

 Lambert filed suit complaining that USAA had mishandled his plumbing claim. 
Prior to trial, the trial court granted partial summary judgment for Lambert, ruling as a matter of
law that USAA's delay in payment violated the statutory time lines set forth in article 21.55 of the
Insurance Code. (2) See Tex. Ins. Code Ann. art. 21.55 (West Supp. 1999). Jury questions were
submitted on Lambert's remaining issues: (1) economic damages consisting of pipe and labor,
investigation expenses, and the general contractor's overhead and profit; (2) mental anguish;
(3) violations of the DTPA, Tex. Bus. & Com. Code Ann. §§ 17.41-.63 (West 1987 & Supp.
1999); (3) (4) violations of articles 21.21 and 21.21-2 of the Texas Insurance Code, see Tex. Ins.
Code Ann. arts. 21.21, 21.21-2 (West 1981 & Supp. 1999); (5) "knowing" violations of both the
DTPA and Insurance Code; (6) breach of the duty of good faith and fair dealing ("bad faith"); (7)
breach of contract; and (8) attorney's fees and costs.

 The jury found that USAA breached its insurance contract; that Lambert sustained
$7,187.35 in actual economic damages; and that Lambert suffered $200,000 in mental anguish
damages. Further, the jury found that USAA violated the DTPA and Insurance Code and that
these violations were committed knowingly. Based on Lambert's election to recover under the
DTPA, the trial court rendered judgment that Lambert recover his economic damages and mental
anguish damages found by the jury, trebled for a knowing violation, yielding a total award of
$621,562.05. Despite Lambert's election to recover under the DTPA, the trial court also awarded
him economic damages of $7,187.35 for breach of contract. Finally, the court awarded Lambert
$33,800 for attorney's fees. USAA perfected this appeal.


DISCUSSION



 USAA presents thirteen issues on appeal. Issues one through ten challenge the legal
and factual sufficiency of the evidence to support the various jury findings. Issues eleven through
thirteen complain that the trial court abused its discretion in allowing Lambert to offer improper
rebuttal testimony on mental anguish, awarding damages for both breach of contract and DTPA
resulting in a double recovery, charging the jury on economic damages, and ignoring the jury's
fatally conflicting answers.


Violations of the DTPA


 In point of error eight, USAA argues that the evidence is legally and factually
insufficient to support the jury's finding that USAA violated the DTPA. Section 17.46 of the
DTPA makes unlawful any false, misleading, or deceptive acts or practices in trade or commerce. 
See DTPA § 17.46(a). Subsection 17.46(b) provides a non-exhaustive laundry list of what
constitutes false, misleading, or deceptive acts or practices. See DTPA § 17.46(b).

 The jury found that USAA engaged in a false, misleading, or deceptive act or
practice by failing to disclose information about the insurance policy that was known at the time
of the transaction, and that such failure was intended to induce Lambert into a transaction that he
would not have entered into had the information been disclosed. This jury question substantially
tracked the language found in subsection (b)(23) of section 17.46. See DTPA § 17.46(b)(23). 
USAA complains on appeal that Lambert failed to produce any evidence that USAA induced him
into purchasing the insurance policy by failing to disclose information about the policy and,
therefore, that the trial court improperly awarded damages to Lambert pursuant to his DTPA cause
of action. In the alternative, USAA argues that the evidence was factually insufficient to support
the DTPA finding.

 In deciding a no-evidence point, we consider all the evidence in the light most
favorable to the prevailing party, indulging every reasonable inference in that party's favor. See
Associated Indem. Corp. v. CAT Contracting, Inc., 964 S.W.2d 276, 285-86 (Tex. 1998). See
generally William Powers, Jr. & Jack Ratliff, Another Look at "No Evidence" and "Insufficient
Evidence," 69 Tex. L. Rev. 515 (1991); Michol O'Connor, Appealing Jury Findings, 12 Hous.
L. Rev. 65 (1974). In contrast, when reviewing a jury verdict to determine the factual sufficiency
of the evidence, we must consider and weigh all the evidence equally and should set aside the
judgment only if the evidence is factually so weak, or the verdict is so contrary to the
overwhelming weight of the evidence, as to make the judgment clearly wrong and unjust. See
Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965); see also Cain v. Bain, 709 S.W.2d 175, 176
(Tex. 1986); In re King's Estate, 244 S.W.2d 660, 661 (Tex. 1951). See generally Powers &
Ratliff, supra, 69 Tex. L. Rev. 515.

 USAA argues that none of the evidence presented regarding delays in payment is
relevant to the jury's finding of a DTPA violation under section 17.46(b)(23). In support of its
argument, USAA urges this Court to read the term "transaction" as utilized in section
17.46(b)(23) narrowly. That section forbids the failure to disclose information known at the time
of the transaction with the intention of inducing the consumer to enter into a transaction into which
he would not otherwise have entered. See DTPA § 17.46(b)(23). USAA contends the only
relevant transaction here was the initial purchase of the insurance policy. Because Lambert
presented no evidence of a failure to disclose in connection with his initial purchase of the
insurance policy, USAA argues he is not entitled to recover under the DTPA.

 We will assume without deciding that, for purposes of DTPA § 17.46(b)(23) and
indemnity policies of insurance, the term "transaction" may be read to encompass more than the
initial purchase of the policy, i.e., that it may also refer to transactions in the claims-processing
arena.

 We are aware that the transaction Lambert entered into as a result of USAA's
alleged failure to disclose was not with USAA, but rather with third parties. Section 17.46(b)(23)
requires that the wronged party be induced into a transaction which he otherwise would not have
entered, but there is no requirement that the detrimental transaction be with the party who made
the deceptive statement. See Doe v. Boys Clubs of Greater Dallas, Inc., 868 S.W.2d 942, 954
(Tex. App.--Amarillo 1994) (stating without discussion that DTPA does not require transaction
into which consumer is induced be with person failing to disclose), aff'd, 907 S.W.2d 472 (Tex.
1995). Construing the DTPA liberally, as we must, we find it immaterial that the transaction
Lambert was induced to enter was with a third party rather than USAA. In so concluding, we
distinguish between a transaction resulting from the failure to disclose and a transaction in which
the deception occurs. See DTPA § 17.46(b)(23) (forbidding failure to disclose information known
at time of transaction with intention of inducing consumer to enter into transaction into which he
would not have otherwise entered). With regard to the third-party issue, we address only the
former.

 We turn now to the sufficiency of the evidence presented. The record shows that
Lambert first reported his plumbing claim to USAA in late August 1994. USAA chose to hire
Herndon to conduct testing and provide a bid for repairs. After receiving the bid, USAA stated
in a letter to Lambert that it would prefer to get a second opinion. However, the second bid was
significantly higher than the Herndon bid. By letter dated December 13, 1994, USAA informed
Lambert that it would remit payment based on the Herndon bid, explaining that as soon as USAA
received certain necessary documents, "a check will be forwarded." This letter apparently crossed
in the mail with a letter from Lambert indicating that he was requesting a third bid from another
plumber. After receiving Lambert's letter, USAA wrote Lambert advising that because he was
still requesting additional bids, USAA would delay payment if Lambert so desired.

 After considering and weighing all the evidence, we conclude that there is no
evidence to support the jury's finding that USAA engaged in deceptive practices by failing to
disclose information with the intention of inducing Lambert to enter into a transaction which he
otherwise would not have entered. While the evidence does show that USAA rejected the
Herndon bid, there is no evidence that, in requesting a second estimate, USAA failed to disclose
any information to Lambert in an attempt to induce him into seeking a second bid. In fact, USAA
clearly stated the reasons for seeking a second bid, and nothing in the record suggests a failure to
disclose any other relevant facts in an attempt to induce Lambert to take any action.

 Furthermore, after the parties learned that the second bid was higher than the
Herndon bid, it was Lambert, not USAA, who decided to seek a third bid. USAA indicated it
would remit payment on the Herndon bid, and subsequently delayed payment based only on
Lambert's indication that he was seeking a third bid. USAA confirmed that Lambert could request
immediate payment if he opposed the delay. This evidence does not suggest any failure to disclose
on the part of USAA in an attempt to induce Lambert into seeking further bids.

 Our review of the record leads us to conclude that the record contains no more than
a scintilla of evidence that USAA engaged in deceptive practices by failing to disclose facts with
the intention of inducing Lambert to enter into a transaction he otherwise would not have entered
into. We therefore sustain point of error eight, challenging that part of the trial court's judgment
awarding Lambert recovery based on a DTPA violation.


Alternative Findings


 That the jury's finding of a DTPA violation is not supported by legally sufficient
evidence does not end our inquiry. As indicated previously, the jury also found for Lambert on
theories of breach of contract, violations of the Insurance Code, and bad faith. When a jury
returns favorable findings on two or more alternative theories, the prevailing party may seek
recovery under an alternative theory if judgment on one theory is reversed on appeal. See
Transport Ins. Co. v. Faircloth, 898 S.W.2d 269, 274 (Tex. 1995); Boyce Iron Works, Inc. v.
Southwestern Bell Tel. Co., 747 S.W.2d 785, 787 (Tex. 1988). The prevailing party has the right
to a judgment entitling him to the greatest recovery. See Boyce Iron Works, 747 S.W.2d at 787. 
Rather than remanding to the trial court, the appellate court should consider all alternative theories
and render judgment on the theory granting the next highest award of damages that is supported
by sufficient evidence. See St. Paul Ins. Co. v. Rakkar, 838 S.W.2d 622, 630-31 (Tex.
App.--Dallas 1992, writ denied) (citing Birchfield v. Texarkana Memorial Hosp., 747 S.W.2d
361, 367-68 (Tex. 1987)).

 Accordingly, we turn to whether Lambert may recover under the jury's finding
supporting the next highest award of recovery: violation of the Insurance Code.


Insurance Code Violations


 Articles 21.21 and 21.21-2 of the Insurance Code make it unlawful to engage in
unfair or deceptive practices in the business of insurance. See Ins. Code arts. 21.21, 21.21-2. 
Section 4(10) of article 21.21 and section 2 of article 21.21-2 set forth a laundry list of prohibited
conduct pertaining to unfair claim-settlement practices. See Ins. Code art. 21.21 § 4(10), art.
21.21-2(2). The jury found, inter alia, that USAA violated these provisions by not attempting in
good faith to effectuate a prompt, fair, and equitable settlement of Lambert's plumbing claim once
USAA's liability became reasonably clear. This jury question substantially tracked the language
found in article 21.21, section (4)(10)(ii) and article 21.21-2, section 2(b)(4). The jury further
found that liability became reasonably clear on October 26, 1994, the date of the Herndon bid. 
USAA complains that there is insufficient evidence to support this finding.

 USAA's claims adjuster, Robinson, testified that soon after Lambert initially
reported his claim, the two met at Lambert's home, and Robinson conducted a visual inspection
of the property. At that meeting, Robinson indicated to Lambert that any confirmed plumbing
leaks would be covered by the policy. (4) Lambert explained that he had already consulted a
plumbing company and engineering firm, and that both experts had confirmed his suspicions
concerning problems with his plumbing. Lambert later mailed each expert's report to Robinson.

 Robinson testified that he, on behalf of USAA, chose Herndon to conduct further
testing and provide a bid for repairs. When asked why he refused to use the plumbing company
that had already performed initial testing on Lambert's home, Robinson responded that he was not
familiar with that company and therefore chose to hire Herndon based on his recent experience
with Herndon on a large project in Corpus Christi. Despite the fact that USAA chose Herndon,
it is undisputed that USAA later dismissed the Herndon bid as too expensive.

 Based on this evidence, we believe a reasonable jury could have found that USAA's
liability was reasonably clear as of October 26, 1994, the date of Herndon's bid. Robinson testified,
and correspondence confirmed, that he told Lambert USAA would be liable for any confirmed
plumbing leaks. Herndon, the plumbing company USAA itself hired, confirmed plumbing leaks in
its October 26th report. In his letter to Lambert, Robinson did not deny the existence of coverage
for the repairs indicated by Herndon. While Robinson stated only that he "preferred" getting a
second bid, he did not offer to pay Lambert the amount of the Herndon bid at that time. Only
when the second bid came in higher did Robinson offer to pay on the lower bid, and even then
approved getting a third bid. A reasonable jury could have found that by "bid-shopping" after
liability became reasonably clear, USAA did not effectuate a prompt, fair, and equitable settlement
of Lambert's plumbing claim. Accordingly, we find the evidence legally sufficient to uphold the
jury's finding that USAA violated articles 21.21 and 21.21-2 of the Insurance Code.


Actual Damages


 Having found sufficient evidence to uphold the jury's alternative finding under the
Insurance Code, we turn to the damages awarded pursuant to that finding. Lambert recovered the
following in economic damages: (1) $600 for out-of-pocket investigative costs incurred after
Lambert's claim was filed; (2) $3,854.50 for the overhead and profit of Lambert's general
contractor; and (3) $2,732.85 for pipe and labor. These damages totaled $7,187.35. USAA
argues in point of error six that Lambert is precluded from collecting for pipe and labor or
overhead and profit because he has suffered no loss as to these items. USAA further asserts that
the investigative costs are excluded under the policy and are thus not compensable.

 Because insurance contracts are contracts of indemnity, an insurer is not liable for
more than the actual amount of the insured's loss. See State Farm Fire & Cas. Co. v. Griffin, 888
S.W.2d 150, 156 (Tex. App.--Houston [1st Dist.] 1994, no writ). Thus, if the insured has not
sustained a loss, the insurer has no liability. See Highlands Ins. Co. v. City of Galveston, 721
S.W.2d 469, 471 (Tex. App.--Houston [14th Dist.] 1986, writ ref'd n.r.e.).

 In the present case, the record shows that USAA paid Lambert $17,090 for the
repair of his plumbing system. Lambert testified that he does not owe STTI, his general
contractor, any amount of money for its services. His testimony establishes that STTI accepted
the amount paid by USAA as full payment for the plumbing work done. Further, the record
shows that STTI issued a waiver of lien stating that it had been paid in full.

 A representative of STTI testified that it had agreed to allow Lambert to add
amounts initially charged by STTI for overhead and profit to Lambert's lawsuit against USAA. 
The representative went on to say that any amount recovered would be returned to Lambert to
compensate him for having to deal with this "nightmare" and to cover any expenses Lambert may
have incurred. This gratuitous agreement by STTI to waive any additional sums due and to
speculate on a recovery does not constitute evidence that Lambert owes STTI any money, nor that
he paid any money to STTI for which he was not reimbursed by USAA. The evidence is
undisputed that STTI agreed to waive any amounts due in excess of that paid by USAA. We
conclude that Lambert has not sustained any actual monetary loss and therefore is not entitled to
recover actual damages for STTI's overhead and profit.

 Similarly, Lambert is not entitled to recover damages for pipe and labor because
he has sustained no monetary loss. Lambert testified that he did not pay for pipe and labor. Both
Lambert and STTI's representative testified that Lambert does not owe STTI for pipe and labor. 
The plumber who actually repaired Lambert's plumbing system testified that his invoices had been
paid in full by STTI. Again, the STTI representative testified that Lambert was told he could add
the cost of the pipe and labor to his lawsuit. But this evidence does not negate the undisputed fact
that STTI agreed to waive pipe and labor costs, if any, that it might have charged to Lambert.

 We hold that because Lambert has not incurred any actual monetary detriment and
has no out-of-pocket loss for either STTI's profit and overhead or the cost of pipe and labor, he
has suffered no actual damages; thus, he is not entitled to the $2,732.85 or $3,854.50 sums
awarded for these items.

 The trial court also awarded recovery of $600 for investigative costs incurred after
Lambert filed his plumbing claim. The record shows that before reporting his plumbing problems
to USAA, Lambert hired Leak Locators to conduct an initial assessment of his plumbing. Upon
reporting the plumbing leaks to USAA, Lambert informed Robinson, the USAA adjuster, that he
intended to have Leak Locators conduct additional testing. Robinson did not inform Lambert that
any post-claim tests ordered by Lambert would not be covered under the USAA policy. Lambert
proceeded to instruct Leak Locators to continue testing, resulting in $600 of out-of-pocket
expenses. The jury found that USAA had engaged in an unfair or deceptive act or practice by
misrepresenting to Lambert facts or policy provisions relating to coverage, and found that $600
would fairly and reasonably compensate Lambert for his un-reimbursed, out-of-pocket
investigative expenses.

 A policyholder's mistaken belief about the availability of coverage is not actionable
under article 21.21 or article 21.21-2 of the Insurance Code. See Moore v. Whitney-Vaky Ins.
Agency, 966 S.W.2d 690, 692-93 (Tex. App.--San Antonio 1998, no pet.); Sledge v. Mullin, 927
S.W.2d 89, 94 (Tex. App.--Fort Worth 1996, no writ). Similarly, a policyholder's reliance on
the insurance company to advise of coverage does not give rise to an actionable misrepresentation. 
See id.

 Lambert does not argue that Robinson misrepresented to him that his policy would
cover investigative expenses. Further, the undisputed evidence shows that Robinson informed
Lambert that USAA would be conducting its own investigation using its own plumbers. Because
nothing in the record suggests a misrepresentation by USAA concerning the coverage of Lambert's
investigative costs, we hold that Lambert is not entitled to the $600 awarded for this item.


Economic Damages Question


 USAA complains in issue thirteen that the trial court abused its discretion because
the submission of compensatory damages questions unfairly prejudiced the jury. USAA argues
that the trial court erred in submitting the questions regarding overhead and profit, pipe and labor,
and investigative expenses because there was no evidence or legal basis for compensatory
damages.

 Because we have found that Lambert is not entitled to recover for overhead and
profit, pipe and labor, or investigative expenses, USAA's argument in issue thirteen is moot.


Knowing Violation


 In order to recover mental anguish damages for violations of article 21.21 or article
21.21-2 of the Insurance Code, the plaintiff must obtain a finding that the defendant acted
"knowingly." See State Farm Life Ins. Co. v. Beaston, 907 S.W.2d 430, 435-36 (Tex. 1995);
American Nat'l Ins. Co. v. Paul, 927 S.W.2d 239, 245 (Tex. App.--Austin 1996, writ denied). 
USAA complains in issue four that the evidence is legally or factually insufficient to support the
jury's finding that USAA committed a "knowing" violation. We disagree.

 The Texas Supreme Court recently clarified that a knowing violation of the
Insurance Code occurs where the offending party has "actual awareness" of the deception. See
St. Paul Surplus Lines Ins. Co. v. Dal-Worth Tank Co., 974 S.W.2d 51, 53-54 (Tex. 1998). The
court explained:


"Actual awareness" does not mean merely that a person knows what he is doing;
rather, it means that a person knows that what he is doing is false, deceptive, or
unfair. In other words, a person must think to himself at some point, "Yes, I know
this is false, deceptive, or unfair to him, but I'm going to do it anyway."


Id.

 It bears repeating that Robinson told Lambert that any confirmed plumbing leaks
would be covered by the policy. Robinson himself then selected a plumbing company that he
trusted to conduct further testing and submit an estimate. Upon receiving Herndon's report and
bid, Robinson did not deny the plumbing leaks indicated were covered by Lambert's policy; he
simply requested that Lambert get a second opinion, apparently believing he could get a lower bid. 
We believe a reasonable jury could have concluded that USAA knew Lambert was entitled to
prompt payment on his claim; that USAA's "bid-shopping" instead of paying based on the
Herndon bid was reasonably certain to prevent Lambert from receiving prompt payment; that
USAA knew that delay was the inevitable result of seeking additional bids; and that USAA chose
to engage in this unfair conduct anyway.

 We hold that the evidence was both legally and factually sufficient to support the
jury finding that USAA committed a knowing violation of the Insurance Code; therefore, the
requisite culpable mental state needed to support mental anguish damages under articles 21.21 and
21.21-2 was established. Having so held, we must next determine whether the evidence was
sufficient to support the jury's mental anguish finding.


Mental Anguish--Sufficiency of Evidence to Support Compensability


 The jury found that Lambert suffered $200,000 in damages for mental anguish. 
USAA complains in issue two that there was legally and factually insufficient evidence to support
a finding of any compensable mental anguish.

 The Texas Supreme Court recently revisited the standard for awarding mental
anguish damages in Latham v. Castillo, 972 S.W.2d 66, 69-70 (Tex. 1998). The court held that
the plaintiff must produce some direct evidence of the nature, duration, and severity of the mental
anguish showing a substantial disruption in the plaintiff's daily routine. See id.; see also Gunn
Infiniti, Inc. v. O'Byrne, 42 Tex. Sup. Ct. J. 828 (June 24, 1999); Parkway Co. v. Woodruff, 901
S.W.2d 434, 444 (Tex. 1995). Courts are instructed to "closely scrutinize" awards of mental
anguish damages. See Gunn Infiniti, 42 Tex. Sup. Ct. J. at 833; Universe Life Ins. Co. v. Giles,
950 S.W.2d 48, 54 (Tex. 1997).

 Several supreme court opinions provide guidance as to what constitutes evidence
of a high degree of distress and pain of a nature significant enough to survive a traditional no-evidence review. For example, testimony by plaintiffs that they were "very disturbed," "not
pleased," "upset," and "hot" is evidence of "mere emotions" not rising to a compensable level. 
Parkway, 901 S.W.2d at 445. In Saenz v. Fidelity & Guaranty Insurance Underwriters, 925
S.W.2d 607, 614 (Tex. 1996), the court held that plaintiff's allegations that she "worried a lot"
did not rise to a compensable level.

 In a very recent case, the plaintiff testified that he had "a constant mental sensation
of pain or a rude awakening," that the experience was "like a nightmare," and that he had felt
"embarrassment," "humiliation," and "severe disappointment." Gunn Infiniti, 42 Tex. Sup. Ct.
J. at 833. The supreme court held that the plaintiff's mental anguish that was related to the
defendant's misrepresentations was insufficient to be compensable:


The remaining testimony that O'Byrne offered to establish mental anguish is
conclusory and does not present evidence of the nature, duration, or severity of his
mental anguish. Simply because a plaintiff says he or she suffered mental anguish
does not constitute evidence of the nature, duration, and severity of any mental
anguish that is sufficient to show a substantial disruption of one's daily routine.


Id. at 833-34.

 In contrast, the court held that the plaintiffs in Latham presented at least some
evidence that the defendant's conduct caused them a high degree of mental pain and distress. See
Latham, 972 S.W.2d at 69-70. There, one plaintiff testified that the ordeal "made me throw up";
"made me sick, nervous, mad," and "hurt me a lot." The other explained that he "was
devastated," "felt physically ill," and "my heart was broken." Id. The supreme court held that
the jury could have found that this testimony went beyond "mere emotion."

 Because Lambert's testimony in the present case is crucial to our resolution of this
issue, we quote at length from the record:


Q: Can you describe to the jury how USAA's handling of your plumbing claim
affected you?


A: This has been a complete ordeal for me. This whole thing has been drug out. 
They questioned everything I gave them. I've been in limbo now. Don't
know what to do. Forced to -- you know, I didn't feel like that I was getting
a fair shake. I was forced to hire people to kind of represent my interests,
trying to deal with getting plumbing claims, a hassle trying to deal with these
people, trying to get information from them. Didn't get any specifications. 
I didn't know what kind of pipe, what kind of backfill. You know, I just --
it's just -- it's just a nightmare.


 And so this has been a struggle for me through this -- through this whole
thing. Just don't know what to do.


* * *


 I think that this -- this case -- this has been an experience from hell. I've
been ridiculed, castigated for doing things that I think are reasonable and prudent --


* * *


 This claim affected me three ways. First of all, it made me extremely angry
that I was treated this way by this company, put through this. Resentment on my
part for having to go through this process to get what I think was a legitimate
claim, and periods of not being able to sleep at night during the fall when this was
going on which led to some other actions on my part which I guess I can't explain.



 In reviewing the evidence to determine its legal sufficiency, we must indulge every
reasonable inference in Lambert's favor. See CAT Contracting, Inc., 964 S.W.2d 285-86 (Tex.
1998). While the evidence in this case may not rise to the level of that in Latham, we believe
Lambert did present more than a scintilla of evidence to support the jury finding that he suffered
compensable mental anguish. In so finding, we recognize the testimony found to be legally
insufficient in Gunn Infiniti is, in some respects, similar to Lambert's testimony in the present
case. See Gunn Infiniti, 42 Tex. Sup. Ct. J. at 833. Lambert did testify, however, that he
suffered from "periods of not being able to sleep at night during the fall." While this statement
is vague, it is not completely conclusory. Viewing this statement in connection with the remaining
testimony, we conclude that it provides more than a scintilla of evidence of a disruption in
Lambert's daily routine.

 We agree with USAA, however, that the evidence was factually insufficient to
support the mental anguish finding. Although Lambert testified that there were "periods" during
"the fall" of "not being able to sleep," he did not address the duration or severity of this problem
as required for a compensable mental anguish claim. For instance, Lambert did not relate how
often he lost sleep "during the fall" or how much his sleep was disturbed on any given night. We
conclude that the evidence supporting Lambert's mental anguish is so weak as to make the
judgment clearly wrong and unjust. Accordingly, we hold that the evidence was factually
insufficient to support a jury finding that Lambert suffered compensable mental anguish.


Mental Anguish--Rebuttal Testimony


 USAA argues that the trial court erroneously allowed Lambert to testify as to his
mental anguish damages during improper "rebuttal" and then counseled Lambert on how he should
testify. USAA complains that these actions constitute an abuse of discretion. In light of our
holdings above pertaining to the insufficiency of evidence to show damages, we need not address
this complaint.


Mental Anguish--Allocation

 USAA next contends Lambert presented no evidence of mental anguish damages
because he did not distinguish his mental anguish caused by the handling of his plumbing
claim--for which he recovered--from that caused by the denial of his foundation claim--for which
he did not recover. USAA argues that, because Lambert is unable to allocate between his damages
for covered and excluded perils, the trial court erred in awarding mental anguish damages. In
support of its argument, USAA relies on Lyons v. Millers Casualty Insurance Co., 866 S.W.2d
597 (Tex. 1993), and Travelers Indemnity Co. v. McKillip, 469 S.W.2d 160 (Tex. 1971). We
believe this reliance is misplaced.

 Both Lyons and McKillip involved a dispute over whether damage to a structure was
caused by a covered peril or an excluded peril. See Lyons, 866 S.W.2d at 601 (allocation between
covered storm damage and excluded pre-existing structural damage); McKillip, 469 S.W.2d at 163
(allocation between covered storm damage and excluded damage for weight of snow). We agree
that these cases stand for the general proposition that where injury is caused by a combination of
covered and non-covered perils, there must be some evidence by which the court can allocate
damages. We do not believe, however, that this translates into an absolute bar to a recovery of
mental anguish damages in all cases in which such allocation is not made.

 The need to segregate recoverable and non-recoverable damages often arises in the
context of attorney's fees. Generally, a party is required to allocate between the amount of
attorney's fees incurred in causes of action for which attorney's fees are recoverable and those for
which they are not, as well as between successful and unsuccessful claims. See Chilton Ins. Co.
v. Pate & Pate Enters., 930 S.W.2d 877, 896 (Tex. App.--San Antonio 1996, writ denied). An
exception to the allocation requirement applies, however, when the respective claims are so
interrelated as to entail essentially the same proof and facts. Id. In these cases, segregation of
attorney's fees becomes "impractical, if not impossible." Id.

 We believe that the reasoning behind the attorney's fees allocation exception should
be applied in the instant case. Lambert testified that it was difficult for him to separate his mental
anguish caused by the plumbing claim from that caused by the foundation claim because "they are
all the same to me." The record reveals that Lambert's plumbing and foundation claims were
being handled during the same time period and are interrelated. Indeed, Lambert contended that
the foundation problems were caused by the plumbing problems. This constitutes at least some
evidence that these claims involved the same set of facts and were interrelated during the time
Lambert suffered mental anguish. Asking Lambert to segregate his mental anguish would force
him to testify, for example, that on day one he was extremely angry and lost sleep due only to
USAA's handling of his plumbing claim, while on day two he could with certainty attribute his
anger and loss of sleep only to the handling of his foundation claim. Testimony of this nature
would be questionable at best.

 In concluding that Lambert is not barred from recovering mental anguish damages
for failure to segregate, we are mindful of language found in Latham, where the court held that
the directed verdict against plaintiffs was improper because there was some evidence that the
plaintiffs had suffered compensable mental anguish. The court then added:


We are confident that the trial judge will instruct the jury to differentiate between
the mental anguish the [plaintiffs] suffered because of their daughters' deaths,
which is not compensable in this suit, and that they may have suffered because of
[defendant's] actions, for which the [plaintiffs] may be compensated.


Latham, 972 S.W.2d at 70. We do not interpret this instructional language relating to the jury
charge as barring a recovery of damages for mental anguish in the situation where two causes are
so intertwined as to be indistinguishable by the plaintiff.

 In any event, in the present case, during Lambert's testimony all questions
concerning his mental anguish were carefully limited to that specifically related to his plumbing
claim. Although Lambert admitted that he had difficulty distinguishing between his plumbing and
foundations claims, the jury could reasonably have inferred that the mental anguish to which
Lambert testified was attributable in toto to the plumbing claim.

 We hold that under the facts of this case, the award of mental anguish damages does
not fail for Lambert's failure to distinguish the damages resulting from the two claims.


Double Recovery


 In issue five, USAA contends that the trial court improperly awarded Lambert a
double recovery for his actual damages. The jury found identical economic damages for USAA's
breach of contract and violation of the DTPA. Although Lambert elected to recover pursuant to
his DTPA theory, the trial court awarded economic damages under both breach of contract and
DTPA. This is an impermissible double recovery. See Waite Hill Servs., Inc. v. World Class
Metal Works, Inc., 959 S.W.2d 182, 184-85 (Tex. 1998). We have found that Lambert is not
entitled to recovery under his DTPA theory, but may be entitled to recover under the Insurance
Code theory; therefore, the impermissible double recovery issue remains. However, because we
have found that Lambert is not entitled to recover any amount awarded for economic damages,
USAA's complaint is moot.


Conflicting Jury Answers


 In issue eleven, USAA complains that there is a fatal conflict between the jury's
answers to Question 3, addressing the DTPA issue, and Question 5, addressing the Insurance Code
issue. USAA urges this Court to reverse and remand this case for a new trial in light of the
irreconcilable conflict. In light of our holdings that the evidence of economic damages is legally
insufficient and the evidence of compensable mental anguish is factually insufficient, we need not
address this issue.


Findings of Breach of Contract and Bad Faith


 USAA complains in issues seven and nine that there is insufficient evidence to
support the jury findings as to Lambert's causes of action for breach of contract and common-law
bad faith. Because we have found legally sufficient evidence to support Lambert's cause of action
for violations of the Insurance Code, we need not address USAA's issues pertaining to other
causes of action.



Attorney's Fees


 In issue twelve, USAA complains that the evidence was legally and factually
insufficient to support the $33,800 for attorney's fees awarded in the judgment. In light of our
holdings pertaining to the insufficiency of evidence to show damages, we need not address this
complaint.

 Lambert filed a notice of appeal as cross-appellant, presumably attacking the trial
court's determination that he was entitled to only $33,800 for attorney's fees rather than the
$50,700 found by the jury. Again, because of our holdings pertaining to the insufficiency of
evidence to show damages, we need not address Lambert's complaint.


Viability of Theories of Recovery - Summary


 We conclude that the evidence is legally insufficient to uphold the jury's finding that
USAA engaged in violations of the DTPA; however, the evidence is legally sufficient to uphold
the finding of a violation of articles 21.21 and 21.21-2 of the Insurance Code, the alternative
theory affording Lambert the next greatest recovery. The evidence is legally insufficient,
however, to support an award of actual damages for overhead and profit, pipe and labor, or
investigative expenses. (5) However, because the evidence is sufficient to uphold the jury finding
that USAA committed a knowing violation of articles 21.21 and 21.21-2 of the Insurance Code,
Lambert established the culpable mental state needed to support mental anguish damages under
that theory. Nevertheless, we find the evidence that Lambert suffered compensable mental anguish
to be factually insufficient. Because we may not order a separate trial on unliquidated damages
alone when liability is contested, see Tex. R. App. P. 44.1(b), we must remand the portion of the
cause concerning the article 21.21 and 21.21-2 violations for a new trial, along with Lambert's
remaining theory of breach of the duty of good faith.


CONCLUSION



 We affirm the uncontested award of damages for violation of article 21.55 of the
Insurance Code. We reverse the remainder of the trial court's judgment. As to the part reversed,
we render judgment that Lambert take nothing on his claims for DTPA violations and breach of
contract; we sever and remand to the trial court for further proceedings Lambert's claims for other
Insurance Code violations and breach of the duty of good faith.



 

 J. Woodfin Jones, Justice

Before Justices Jones, B. A. Smith and Yeakel

Affirmed in Part; Reversed and Rendered in Part; Reversed and Remanded in Part

Affirmed: August 26, 1999

Do Not Publish

1. Throughout the bidding process concerning the plumbing leaks, USAA was also
investigating Lambert's claim that his home was suffering from foundation problems. By letter
dated January 17, 1995, USAA denied Lambert's foundation claim based on policy exclusions. 
The validity of the foundation claim was determined in USAA's favor on motion for summary
judgment and is not an issue in this appeal.
2. Lambert was awarded $1,024.33 based on this statutory violation. USAA does not contest
this award, and it is not an issue in this appeal.
3. The applicable version of the DTPA is determined by the date of the occurrence of the
deceptive act or practice. See La Sara Grain Co. v. First Nat'l Bank, 673 S.W.2d 558, 565 (Tex.
1984). Because the act in question here occurred in 1994, Lambert's cause of action accrued
under the version of the DTPA in force at that time. At issue in this appeal are DTPA
§§ 17.50(b)(1) and 17.46(b)(23). Section 17.50(b)(1) as it was in effect in 1994 provided that each
consumer who prevailed in a suit under that section could obtain


the amount of actual damages found by the trier of fact. In addition the court shall
award two times that portion of the actual damages that does not exceed $1,000. If
the trier of facts finds that the conduct of the defendant was committed knowingly,
the trier of fact may award not more than three times the amount of actual damages
in excess of $1,000.


Act of May 12, 1989, 71st Leg., R.S., ch. 380, § 2, 1989 Tex. Gen. Laws 1490, 1491 (Tex. Bus.
& Com. Code Ann. § 17.50(b)(1), since amended). Unless otherwise indicated, references to
section 17.50(b)(1) are to the provision as effective in 1994. The version of section 17.46(b)(23)
in effect in 1994 is identical to the current version. See Act of Aug. 27, 1979, 66th Leg., R.S.,
ch. 603, § 3, 1979 Tex. Gen. Laws 1327, 1328 (Tex. Bus. & Com. Code Ann. § 17.46(b)(23)).
4. Correspondence from Robinson to Lambert also related USAA's position that the cost of
accessing any plumbing leaks would be covered.
5. Because Lambert has suffered no economic damages, he is not entitled to recover under his
breach-of-contract theory. See, e.g., Hallmark v. Hand, 885 S.W.2d 471, 481 (Tex. App.--El
Paso 1994, writ denied) (damages for breach of contract are limited to those that are consequence
of breach, and do not include mental anguish).


21-2 of the Insurance Code, the alternative
theory affording Lambert the next greatest recovery. The evidence is legally insufficient,
however, to support an award of actual damages for overhead and profit, pipe and labor, or
investigative expenses. (5) However, because the evidence is sufficient to uphold the jury finding
that USAA committed a knowing violation of articles 21.21 and 21.21-2 of the Insurance Code,
Lambert established the culpable mental state needed to support mental anguish damages under
that theory. Nevertheless, we find the evidence that Lambert suffered compensable mental anguish
to be factually insufficient. Because we may not order a separate trial on unliquidated damages
alone when liability is contested, see Tex. R. App. P. 44.1(b), we must remand the portion of the
cause concerning the article 21.21 and 21.21-2 violations for a new trial, along with Lambert's
remaining theory of breach of the duty of good faith.


CONCLUSION



 We affirm the uncontested award of damages for violation of article 21.55 of the
Insurance Code. We reverse the remainder of the trial court's judgment. As to the part reversed,
we render judgment that Lambert take nothing on his claims for DTPA violations and breach of
contract; we sever and remand to the trial court for further proceedings Lambert's claims for other
Insurance Code violations and breach of the duty of good faith.



 

 J. Woodfin Jones, Justice

Before Justices Jones, B. A. Smith and Yeakel

Affirmed in Part; Reversed and Rendered in Part; Reversed and Remanded in Part

Affirmed: August 26, 1999

Do Not Publish

1. Throughout the bidding process concerning the plumbing leaks, USAA was also
investigating Lambert's claim that his home was suffering from foundation problems. By letter
dated January 17, 1995, USAA denied Lambert's foundation claim based on policy exclusions. 
The validity of the foundation claim was determined in USAA's favor on motion for summary
judgment and is not an issue in this appeal.
2. Lambert was awarded $1,024.33 based on this statutory violation. USAA does not contest
this award, and it is not an issue in this appeal.
3. The applicable version of the DTPA is determined by the date of the occurrence of the
deceptive act or practice. See La Sara Grain Co. v. First Nat'l Bank, 673 S.W.2d 558, 565 (Tex.
1984). Because the act in question here occurred in 1994, Lambert's cause of action accrued
under the version of the DTPA in force at that time. At issue in this appeal are DTPA
§§ 17.50(b)(1) and 17.46(b)(23). Section 17.50(b)(1) as it was in effect in 1994 provided that each
consumer who prevailed in a suit under that section could obtain