# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00774-CV

**Duane Wilson; Debbie Murphy; Mike Wilson; David Wilson; Mark Wilson;
and Christine Ballenger, Appellants**

**v.**

**Thomason Funeral Home, Inc., Appellee**

## FROM THE COUNTY COURT AT LAW NO. 1 OF HAYS COUNTY
## NO. 6555-C, HONORABLE HOWARD S. WARNER, II, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Duane Wilson, Debbie Murphy, Mike Wilson, David Wilson, Mark Wilson, and
Christine Ballenger (collectively, appellants) sued appellee, Thomason Funeral Home, Inc., for
allegedly mishandling the body of their family member, Barbara Wilson. In one issue, appellants
contend that the trial court erred in granting two summary judgments in favor of Thomason because
fact issues exist concerning all of their causes of action. Thomason cross-appeals, arguing in one
issue that it is entitled to attorney's fees and expenses for defending against appellants' claims. For
the reasons discussed below, we affirm in part, reverse in part, and remand the cause to the trial court
for further proceedings.

**FACTUAL AND PROCEDURAL BACKGROUND**

On September 27, 2000, sixty-two-year-old Barbara Wilson, who was alone at her home in Wimberley, began feeling dizzy and nauseated while taking a shower. She managed to call 911 and get in bed until an ambulance arrived. When Barbara's husband, Duane Wilson, and daughter, Debbie Wilson, arrived at the hospital in San Marcos, Barbara was conscious but unable to communicate because she was wearing an oxygen mask. The doctors ordered an air ambulance to transport Barbara to Austin but she died soon after the helicopter arrived for her, around 2:00 p.m.

One of the emergency room doctors told the family that he thought Barbara died of a blood clot. Because of uncertainty about the cause of death, the family consented to an autopsy. The body then was taken to the Travis County medical examiner in Austin. Unknown to the family, a Hays County justice of the peace authorized an eye bank to remove the corneas for donation. *See* Tex. Health & Safety Code Ann. § 693.012 (West 2003).[1]

---

[1] Section 693.012 of the health and safety code states as follows:

Removal of Corneal Tissue Permitted Under Certain Circumstances

On a request from an authorized official of an eye bank for corneal tissue, a justice of the peace or medical examiner may permit the removal of corneal tissue if:

(1) the decedent from whom the tissue is to be removed died under circumstances requiring an inquest by the justice of the peace or medical examiner;

(2) no objection by a person listed in Section 693.013 is known by the justice of the peace or medical examiner; and

(3) the removal of the corneal tissue will not interfere with the subsequent course of an investigation or autopsy or alter the decedent's postmortem facial appearance.

2

On September 28, members of the Wilson family met with Dwayne Thomason of Thomason Funeral Home to discuss funeral arrangements. Duane Wilson contracted with Thomason for the preparation of the body, a viewing, a funeral, and then transportation of the body to the family's hometown in Kansas for another viewing, funeral, and burial. René Ferrer, Thomason's embalmer, received the body from the medical examiner's office that same day. He noted on his case report that the approximate time between death and embalming was twenty-five hours. He also noted the condition of the body upon arrival: there were autopsy incisions in the chest and head; the corneas had been removed; the lips were severely wrinkled and slightly protruding; and there were discolorations on the fingertips and lower back. In the course of the embalming and preparation, he swabbed out the cornea residue, placed powdered sealant in the eye sockets to prevent leaking, and rebuilt the eye contour with cotton and plastic eye caps. He also cleaned the fingertips and nails and closed the mouth with sutures.

On September 29, Dwayne Thomason checked Ferrer's preparation of the body for the viewing. Although he did not know what Barbara Wilson looked like before she died, he felt that her eyes "didn't look natural" and "looked kind of bugged." To correct the problem, he took out the eye caps and replaced the cotton. Later in the day, several family members came to the funeral home. Ferrer greeted them and explained that "due to the procedure," one eye might appear somewhat swollen, the other somewhat sunken, and that it might get better. Upon seeing the body, family members talked about "how it did not look like Barbara." One daughter, Debbie Murphy,

Tex. Health & Safety Code Ann. § 693.012 (West 2003).

3

noticed something red under the fingernails of her mother's right hand, which she thought was blood because of a visible IV hole in the hand. Debbie also thought her mother's mouth looked rigid and protruding, her eyes "seemed odd," her makeup was "way too heavy," and her hair was not fixed correctly. At Debbie's request, one of her brothers, Mike Wilson, asked a Thomason representative to clean the fingernails. When Debbie saw the body later that day at the viewing, she thought that the hand looked cleaner but the IV hole was "still very apparent."

After the funeral on September 30 in Wimberley, Thomason made arrangements for the body to be transported to Kansas. Bart Stewart of Stewart Funeral Home in Wamego, Kansas received the body on October 1. Debbie, who had arrived in Kansas the previous day, took her mother's jewelry to the funeral home. In the parking lot, she met Stewart, who told her that her mother's eyes had been removed and that the tissue around the eyes had swollen to ten times the normal size. Debbie began crying and left.

Stewart asked his funeral director, Thomas Ziph, to come in that day to make some repairs to the body because it was not in an acceptable condition for a viewing. Upon seeing the body, Ziph observed that there were embalming fluid burns on the face, the eyes had been removed, the eye sockets were not treated properly before embalming, the right eye was sunken and the left protruding, both hands were dirty with dried blood and other soil, and the makeup was too heavy and caked in the hairline. At the viewing that night, Debbie thought her mother still "did not look like herself" but her appearance was improved. Her makeup and hair were better, her mouth was softer, and the IV hole in her hand was covered. The second funeral and burial were held the next day.

4

Soon after the family returned to Texas, Debbie stopped payment on the check to Thomason. She also learned from the Hays County justice of the peace about the authorization for the removal of the corneas. Dwayne Thomason called Duane Wilson to find out why he stopped payment on the check. Wilson responded that he had some concerns about the quality of service. He then told Thomason to direct any questions to his attorney.

In December 2000, Thomason sued Duane Wilson for breach of contract. Wilson filed a countersuit, alleging negligence, negligent infliction of emotional distress, gross negligence, breach of contract, breach of express warranty, and deceptive trade practices act (DTPA) violations. Wilson's children later intervened, joining in their father's causes of action and asserting individual claims for mental anguish. After the parties conducted discovery, Thomason filed a motion for summary judgment, stating that there was no evidence as to all of appellants' claims and that it had established its affirmative defenses and breach-of-contract claim as a matter of law. Appellants filed an amended petition, adding claims for fraud and unconscionability. The trial court granted the summary judgment. Thomason filed a second motion for summary judgment as to appellants' fraud and unconscionability claims, which the trial court also granted. Appellants appeal from these summary judgments.

## STANDARD OF REVIEW

In one issue, appellants contend that the trial court erred in granting the summary judgments because fact issues exist concerning all of their causes of action. Thomason moved for summary judgment on both no-evidence and traditional grounds. It asserted that there was no evidence concerning certain elements of each of appellants' claims. It further asserted, on traditional

5

summary judgment grounds, that it was entitled to summary judgment because it had established its affirmative defenses as a matter of law. Because the trial court's orders do not specify the ground or grounds relied on for its rulings, we must review each argument asserted in the motions and affirm the trial court's judgments if any of these arguments is meritorious. *See Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995). We review the trial court's decision to grant summary judgment *de novo*. *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994). Because Thomason moved for summary judgment on both no-evidence and traditional summary judgment grounds, we will discuss the specific standards of review for both.

### *No-Evidence Summary Judgment*

A party seeking a no-evidence summary judgment must assert that no evidence exists as to one or more of the essential elements of the nonmovant's claims on which it would have the burden of proof at trial. *Holmstrom v. Lee*, 26 S.W.3d 526, 530 (Tex. App.—Austin 2000, no pet.). Once the movant specifies the elements on which there is no evidence, the burden shifts to the nonmovant to raise a fact issue on the challenged elements. Tex. R. Civ. P. 166a(i). The nonmovant is not required to marshal its proof,[2] but it must point out evidence that raises a fact issue. *Id.* 166a(i) cmt. To raise a genuine issue of material fact, the nonmovant must set forth more than a scintilla of probative evidence as to an essential element of the nonmovant's claim on which the nonmovant

---

[2] To "marshal one's evidence" means to arrange all of the evidence in the order that it will be presented at trial. *In re Mohawk Rubber Co.*, 982 S.W.2d 494, 498 (Tex. App.—Texarkana 1998, orig. proceeding).

would have the burden of proof at trial. *See id.* 166a(i); *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). If the evidence supporting a finding rises to a level that would enable reasonable, fair-minded persons to differ in their conclusions, then more than a scintilla of evidence exists. *Havner*, 953 S.W.2d at 711. Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of fact, and the legal effect is that there is no evidence. *Jackson v. Fiesta Mart*, 979 S.W.2d 68, 70 (Tex. App.—Austin 1998, no pet.) (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)). If the nonmovant fails to present evidence raising a genuine issue of material fact as to the challenged element, the trial court must grant the motion. Tex. R. Civ. P. 166a(i). A no-evidence summary judgment is essentially a directed verdict granted before trial, to which we apply a legal sufficiency standard of review. *Jackson*, 979 S.W.2d at 70.

### *Traditional Summary Judgment*

The standards for review of a traditional summary judgment are well established. The movant must demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion. Tex. R. Civ. P. 166a(c). In deciding whether there is a disputed material fact issue precluding summary judgment, the court must take evidence favorable to the nonmovant as true; and the court must indulge every reasonable inference in favor of the nonmovant and resolve any doubts in the nonmovant's favor. *See Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). A defendant moving for summary judgment on

7

an affirmative defense must conclusively establish each element of the affirmative defense to prevail. *See Friendswood Dev. Co. v. McDade + Co.*, 926 S.W.2d 280, 282 (Tex. 1996).

## ANALYSIS

Because appellants relied heavily on the deposition testimony of their expert witness, Thomas Ziph of Stewart Funeral Home, in their attempts to defeat summary judgment, we will first discuss Thomason's assertion that "it is clear that [the trial court] found and ruled that Ziph's testimony would not be admissible as evidence" to support appellants' counterclaims. Appellants counter that Thomason failed to preserve this issue for appeal because it did not obtain a ruling on its objection. Thomason repeatedly argued in its motions for summary judgment and replies to appellants' responses that Ziph was not qualified as an expert witness, primarily because he was not familiar with Texas standards of care for funeral homes. At a hearing, the transcript of which neither party provided to this Court, the trial judge ordered that Ziph be deposed a second time to determine his qualifications. In his second deposition, Ziph opined that, based on telephone discussions with an embalmer and a funeral home director in Texas, Thomason's handling of Barbara Wilson's body constituted negligence and a breach of contract under Texas standards.

The general rule is that a party asserting an objection to evidence must obtain a ruling on that objection to preserve error. Tex. R. App. P. 33.1(a)(2). An implicit overruling of a request, however, can preserve error. *Id.* 33.1(a)(2)(A). The granting of the motion for summary judgment does not necessarily implicitly overrule motions or objections. *See Allen ex rel. B.A. v. Albin*, 97 S.W.3d 655, 661-63 (Tex. App.—Waco 2002, no pet.); *Trusty v. Strayhorn*, 87 S.W.3d 756, 759-63 (Tex. App.—Texarkana 2002, no pet.); *Wrenn v. G.A.T.X. Logistics, Inc.*, 73 S.W.3d 489, 498 (Tex.

App.—Fort Worth 2002, no pet.); *Jones v. Ray Ins. Agency*, 59 S.W.3d 739, 752-53 (Tex. App.—Corpus Christi 2001, no pet.); *Rogers v. Continental Airlines*, 41 S.W.3d 196, 200 (Tex. App.—Houston [14th Dist.] 2001, no pet.); *Well Solutions, Inc. v. Stafford*, 32 S.W.3d 313, 316 (Tex. App.—San Antonio 2000, no pet.); *Dolcefino v. Randolph*, 19 S.W.3d 906, 926-27 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). *But see Frazier v. Yu*, 987 S.W.2d 607, 610 (Tex. App.—Fort Worth 1999, pet. denied) (finding implied ruling because trial court stated in order granting summary judgment that it had reviewed the "competent" summary judgment proof).

Here, as a basis for granting both summary judgments, the trial court stated in its orders that it had "considered all the pleadings, discovery and summary judgment evidence on file herein." The orders are devoid of any reference to Ziph's deposition testimony. Thomason's counsel asserted at oral argument that the trial court ruled on its objection at the summary judgment hearing, but a record of that hearing is not before us and therefore we may not consider it.[3] *See Brown v. Torey*, 22 Tex. 54 (1858); *see also Sabine Offshore Serv., Inc. v. City of Port Arthur*, 595 S.W.2d 840, 841 (Tex. 1979). We find nothing in the record demonstrating that the trial court

[3] Correspondingly, we may not consider documents in Thomason's appendix to its brief that were not part of the appellate record. *See, e.g.*, *Deutsch v. Hoover, Box & Slovacek, L.P.*, 97 S.W.3d 179, 198 (Tex. App.—Houston [14th Dist.] 2002, no pet.). Appellants urge that some of the documents in appellee's appendix also were not before the trial court. In reviewing a trial court's summary judgment decision, we "may consider only the evidence that is on file before the trial court at the time of the hearing or with permission of the court, is filed after the hearing but before judgment." Judge David Hittner & Lynne Liberato, *Summary Judgments in Texas*, 54 Baylor L. Rev. 1, 82 (2002).

9

explicitly or implicitly sustained Thomason's objection.  The orders granting summary judgment, to the contrary, state that the trial court considered "*all* pleadings, discovery and summary judgment evidence," which would necessarily include Ziph's deposition testimony.  (Emphasis added.) Therefore, finding no explicit or implicit ruling on Thomason's objection to Ziph's expert testimony, Tex. R. App. P. 33.1(a)(2)(A), we hold that Thomason has not preserved this issue for our review. We now turn to appellants' issues.

### *Breach-of-Contract Claim and Counterclaim*

Because this case is primarily a dispute over expectation of services rendered in a contract, we will begin by addressing appellants' breach-of-contract counterclaim.  Appellants contend that there is some evidence to show that Thomason breached its funeral services contract with Duane Wilson.  By seeking summary judgment "on the basis that there is no evidence that Thomason Funeral Home breached its contract," Thomason placed the burden on appellants to come forward with *some* evidence on the challenged elements of its breach-of-contract counterclaim.  The elements of a breach-of-contract claim are:  (1) the existence of a valid contract; (2) performance or tendered performance by the claimant; (3) breach of the contract by the opposing party; and (4) damages to the claimant resulting from that breach.  *National W. Life Ins. Co. v. Rowe*, 86 S.W.3d 285, 297 (Tex. App.—Austin 2002, pet. filed).  We construe Thomason's statement that it "fully and reasonably performed all its duties and satisfied any and all of its obligations owed to the Wilsons under the contract" to mean that it challenged the breach element of appellants' counterclaim.

Appellants assert that Thomason had a duty to perform its services in a good and workmanlike manner and that a material fact issue exists whether Thomason breached this standard.

10

At oral argument, Thomason agreed on the standard but argued that there was no issue of material fact. Upon reviewing the record, we agree with appellants that a fact issue exists whether Thomason breached its duty of good and workmanlike performance.

When she saw her mother's body for the first time at Thomason Funeral Home, Debbie thought that her mother's eyes looked odd, her mouth was rigid and protruding, her makeup was too heavy, her hair was not fixed the way her mother liked it, there was blood under the fingernails of her right hand, and there was an IV hole in her right hand. Debbie's brother, Mike, told someone with Thomason to clean the fingernails. At the viewing that evening, Debbie noted that it appeared that someone had tried to clean the right hand, but that it was not completely cleaned, and that the IV hole was still visible. Both Debbie and Duane Wilson testified that Barbara Wilson did not "look like herself."

Thomas Ziph, appellants' expert witness, saw the body two days later at Stewart Funeral Home in Kansas, after Bart Stewart asked him to prepare the body because it was not acceptable for a viewing. Ziph noted that the lips were puckered and wavy, the eyes were unequal in size, the makeup was heavy, and both hands were dirty with dried blood or other soil. His opinion, based on his training and experience in funeral service since 1971 and telephone discussions with a funeral director and an embalming director about standards of care in Texas, was that the condition of the body constituted a breach of contract under Texas standards.

Thomason does not dispute that there was a substance on at least one of the hands. Thomason's embalmer, in fact, noted on his case report that he cleaned discolorations on the fingertips and nails of both hands with grease remover and a nail file. Duane Thomason testified that

11

"once stained after death, it's very difficult to get the staining out of the tissue." Thomason contends, however, that the substance was not blood but red ink used to take fingerprints during the autopsy. Appellants rebutted this assertion with an affidavit from the medical examiner, who averred that Barbara Wilson's fingerprints were taken with black ink.

The differing evidence about whether Thomason properly cleaned the fingers and prepared the body is precisely the kind of evidence that creates a fact question. At oral argument, even Thomason's counsel characterized the dispute about the hand as a "spitting match between the parties." We hold that appellants presented some evidence to create a material fact issue whether Thomason breached its duty of good and workmanlike performance.

Thomason additionally asserted in its first motion for summary judgment that the court should "consider this motion in favor of Thomason on all claims." We interpret this to mean that Thomason sought judgment as a matter of law on its breach-of-contract claim. To prevail as plaintiff, Thomason had the burden to conclusively establish that no issue of material fact exists on every element of its claim. *Nixon*, 690 S.W.2d at 548-49. Because we hold that an issue of material fact exists whether Thomason breached its duty of good and workmanlike performance, we find that Thomason failed to meet the burden of conclusively establishing its breach-of-contract claim as a matter of law. We reverse the trial court's summary judgment orders (i) rendering judgment as a matter of law in favor of Thomason's breach-of-contract claim and (ii) dismissing appellants' breach-of-contract counterclaim. Accordingly, we remand Thomason's breach-of-contract claim and appellants' breach-of-contract counterclaim to the trial court for further proceedings in accordance with this opinion.

12

***Negligence and Gross Negligence Counterclaims***

Appellants further contend that an issue of material fact exists concerning their negligence and gross negligence counterclaims. In its first motion for summary judgment, Thomason challenged the breach and damages elements of appellants' negligence counterclaim. We will limit our analysis to whether appellants presented some evidence of the element of damages because it is dispositive of this issue. *See Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990) (elements of common-law doctrine of negligence include legal duty, breach of the duty, and damages proximately caused by breach).

Appellants brought a claim for negligent infliction of emotional distress. Although there is no general duty to avoid inflicting mental anguish, a claimant may recover mental anguish damages in certain circumstances when a defendant breaches some other legal duty. *Boyles v. Kerr*, 855 S.W.2d 593, 597 (Tex. 1993) (op. on reh'g) (citing *Pat H. Foley & Co. v. Wyatt*, 442 S.W.2d 904, 906-07 (Tex. Civ. App.—Houston [14th Dist.] 1969, writ ref'd n.r.e.) (because of contractual relationship, mental anguish damages allowed for mother when funeral home negligently mishandled son's corpse)). Additionally, although most claims for mental anguish require proof of a physical injury, a claim for mental anguish that is rooted in a contractual relationship and not based solely on negligence may stand without proof of a physical injury. *Pat H. Foley & Co.*, 442 S.W.2d at 906.

In its first motion for summary judgment, Thomason characterized appellants' claim for mental anguish damages as the "heart of the case" and devoted five pages to its argument that other people, not Thomason, caused the mental anguish. Elsewhere in the motion, Thomason

13

contended that it was not fair to hold it responsible for "mental anguish and emotional distress under the facts and circumstances of this case."

In a no-evidence motion for summary judgment, once the movant specifies the elements on which there is no evidence, the burden shifts to the nonmovant to raise a fact issue on the challenged elements. Tex. R. Civ. P. 166a(i). The nonmovant is not required to marshal its proof, but it must "point out" evidence that raises a fact issue. *Id.* 166a(i) cmt. Here, appellants wholly failed to mention mental anguish damages in their two responses to Thomason's motions for summary judgment. "Neither the trial court nor the appellate court has the duty to sift through the summary judgment record to see if there are issues of law or fact that could have been raised by the respondent, but were not." Judge David Hittner & Lynne Liberato, *Summary Judgments in Texas*, 54 Baylor L. Rev. 1, 71 (2002) (discussing burden of proof in responding to a no-evidence motion for summary judgment). Because appellants failed to point out some evidence that raises a fact issue as to their mental anguish damages, Tex. R. Civ. P. 166a(i) cmt., we affirm the summary judgment orders to the extent that they dismiss appellants' counterclaims for negligence and gross negligence.[4]

### Breach of Express Warranty, DTPA, and Fraud Counterclaims

Appellants further assert that they have presented some evidence to support their counterclaims for DTPA violations, breach of express warranty, and fraud. These claims arise from

---

[4] Because appellants' claim for negligence fails, *a fortiori* so must its claim for gross negligence.

the alleged statement by René Ferrer, Thomason's embalmer, to family members that "due to the procedure," one eye might appear somewhat swollen, the other somewhat sunken, and that it might get better. Ferrer allegedly made this statement the day after Duane Wilson entered into the funeral service contract with Thomason. Appellants asserted that Thomason, by making these statements, violated DTPA laundry list sections (b)(7)—misrepresenting the quality of its services—and (b)(24)—failing to disclose information about services if the failure to disclose was intended to induce the consumer into a transaction the consumer would not have assented to had the information been disclosed. *See* Tex. Bus. & Com. Code Ann. §§ 17.46(b)(7), (24) (West 2002). Appellants also brought counterclaims for common-law fraud and breach of express warranty.

Thomason challenged the element of reliance, which is common to all of these claims. *See id.* § 17.50(a)(1)(B) (reliance in DTPA claim); *Henry Schein, Inc. v. Stromboe*, 46 Tex. Sup. Ct. J. 103, 2002 WL 31426407 (Oct. 31, 2002) (reliance in common-law breach of express warranty claim, to a certain extent); *Insurance Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998) (reliance in fraud claim); *see also Harris Packaging Corp. v. Baker Concrete Constr. Co.*, 982 S.W.2d 62, 66-67 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (in breach of warranty claim, reliance not presumed if representation made after bargain). If appellants did not come forward with some probative evidence of reliance, then summary judgment on these claims was proper.

For proof of reliance, appellants point solely to the affidavit of Duane Wilson, which reads in part:

> I was present when my wife's body was first made available for viewing by the family. A representative from Thomason Funeral Home told us that, because of the procedure, they had trouble with my wife's eyes. Because Thomason led me to

15

believe that they had done all they could do for my wife's eyes, I did not complain. I paid for the services provided by Thomason Funeral Home because it was my understanding based on Thomason Funeral Home representative's implication to me that they had done the best job they could given the procedure. Had I been told either that my wife's eyes had been completely removed, or that Thomason had breached any standard of care with respect to preparing my wife's body for burial, I never would have gone through with the contract.

Appellants have adduced no competent proof that they relied on a misrepresentation by Thomason. An affidavit must set forth such facts as would be admissible at a conventional trial on the merits, *see* Tex. R. Civ. P. 166a(f) ("affidavits . . . shall set forth such facts as would be admissible in evidence"), and must be direct, unequivocal, and controvertible. *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984). Here, the only representation, as set forth in the affidavit, is that an unnamed Thomason representative had difficulty with the eyes "because of the procedure." The affidavit implies that a Thomason representative said that he did all that he could, but does not unequivocally aver that anyone with Thomason made the statement. This does "no more than create a mere surmise or suspicion" of fact, which is less than a scintilla of evidence. *Jackson*, 979 S.W.2d at 70 (quoting *Kindred*, 650 S.W.2d at 63). Notably, Wilson's deposition testimony undermines his affidavit. He testified that the Thomason representative told him "there's an indent under her eye" that "may come out and . . . may not come out." When questioned about what else the Thomason representative said, Wilson replied, "That was it." The allegations concerning statements of an unidentified representative of Thomason are insufficient to create a fact issue because they lack the necessary factual specificity and create no more than a suspicion of fact.

Furthermore, the statement, "Because Thomason led me to believe that they had done all they could do for my wife's eyes, I did not complain," is no more than a conclusory subjective belief. Affidavits consisting only of conclusions are insufficient to raise an issue of fact. *See Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996) (stating that "conclusory affidavits are not enough to raise fact issues"); *Brownlee*, 665 S.W.2d at 112. Affidavits may not be based on subjective beliefs. *See Texas Div.-Tranter, Inc. v. Carrozza*, 876 S.W.2d 312, 314 (Tex. 1994) (citing *Brownlee*, 665 S.W.2d at 112); Hittner & Liberato, *supra*, at 44. The statement setting forth a standard for Thomason's conduct, that Wilson would not have gone through with the contract had Thomason told him that the eyes had been removed or had Thomason said that he breached the standard of care, lacks probative force because it is a legal conclusion. *Brownlee*, 665 S.W.2d at 112.

Because the affidavit lacks sufficient factual specificity about Thomason's representations, creates no more than "a mere surmise or suspicion of fact," and makes conclusory statements about reliance that have no probative force, appellants have not presented more than a scintilla of evidence on the reliance element of their DTPA, fraud, and breach of express warranty counterclaims. *See Jackson*, 979 S.W.2d at 70. We therefore affirm the summary judgment orders to the extent that they dismiss appellants' DTPA, fraud, and breach of express warranty counterclaims.

*Unconscionability Counterclaim*

Appellants further assert that they have presented some evidence to support their unconscionability counterclaim. An unconscionable action or course of action is "an act or practice

17

that, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Com. Code Ann. § 17.45(5)(A) (West 2002). "Gross," as used in this section, means "glaringly noticeable, flagrant, complete and unmitigated." *Bradford v. Vento*, 48 S.W.3d 749, 760 (Tex. 2001) (quoting *Morris*, 981 S.W.2d at 677, and *Chastain v. Koonce*, 700 S.W.2d 579, 583 (Tex. 1985)). "[N]ot every misrepresentation of fact, even an intentional one, constitutes unconscionable conduct." *Latham v. Castillo*, 972 S.W.2d 66, 72 (Tex. 1998). The test is whether the consumer was taken advantage of to a grossly unfair degree. *Id.*

In their response to Thomason's second motion for summary judgment, appellants stated the following as the sole support for their unconscionability counterclaim:

> Thomason's breaching the standard of care by mopping out Mrs. Wilson's remaining eye tissue, failing to disclose that the corneas were missing after Thomason knew that the family's expectation was that their mother's remains would remain intact, and then representing to the family that the autopsy was the reason for such a poor result were all acts that took advantage of the Wilsons' lack of knowledge, ability, experience, or capacity to a grossly unfair degree.

This fails to adduce competent summary judgment proof. Appellants base their unconscionability claim on the legal conclusion that Thomason breached a standard of care. Legal conclusions have no probative force as summary judgment evidence. *Brownlee*, 665 S.W.2d at 112. We therefore affirm the summary judgment orders to the extent that they dismiss appellants' unconscionability counterclaim.

18

### *Thomason's Request for Attorney's Fees and Expenses*

In its brief, Thomason stated in the table of contents, statement of the case, and issues presented sections that it was entitled to recover reasonable attorney's fees and expenses, which the trial court declined to award. Thomason cites no authority or record reference for this proposition. A "brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Tex. R. App. P. 38.1(h). Having presented nothing for our review, Thomason has waived this argument.

## CONCLUSION

Because appellants presented some evidence to create a material fact issue whether Thomason breached its duty of good and workmanlike performance, we hold that the trial court improperly granted summary judgment as to Thomason's breach-of-contract claim and appellants' breach-of-contract counterclaim. We further hold that because appellants failed to point out any evidence of mental anguish damages, Tex. R. Civ. P. 166a(i) cmt., the trial court properly granted summary judgment as to appellants' negligence and gross negligence counterclaims. Summary judgment was also proper as to appellants' counterclaims for DTPA violations, breach of express warranty, fraud, and unconscionability. We need not address Thomason's request for attorney's fees and expenses because Thomason waived this argument.

Accordingly, we affirm the trial court's orders granting summary judgment, reversing only the grant of summary judgment as to Thomason's breach-of-contract claim and appellants'

19

breach-of-contract counterclaim. We remand the cause to the trial court for further proceedings in accordance with this opinion.

                    _____

                    Jan P. Patterson, Justice

Before Justices Kidd, Yeakel and Patterson

Affirmed in Part; Reversed and Remanded in Part

Filed:   June 12, 2003